Craig A. TUMBLIN, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9509–CR–564.

Court of Appeals of Indiana.

May 8, 1996.

Pequita Jay Buis, Buis & Associates, In-
dianapolis, for Appellant.

Pamela Carter, Attorney General, Preston
W. Black, Deputy Attorney General, India-
napolis, for Appellee.

## OPINION

KIRSCH, Judge.

Craig Tumblin appeals his conviction for
carrying a handgun without a license,[1] as a
Class A misdemeanor. He raises several
issues on review; however, because we find it
dispositive, we address only one issue:

> Whether the investigatory stop of Tumblin
> by the police was reasonable under the
> circumstances.

We reverse.

## FACTS AND PROCEDURAL HISTORY

On December 14, 1994, at approximately
1:28 a.m., Matthew Elam of the Indianapolis
Police Department was driving in a marked
squad car while on routine patrol. Officer
Elam observed Tumblin and an unidentified
male walking westbound on the sidewalk of
Langley Avenue. When the two men saw
Officer Elam's vehicle, they turned and
walked eastbound on Langley. In response
to their actions, Officer Elam pulled up to
Tumblin and his companion and asked them
to put their hands on his vehicle. Tumblin
initially refused to comply but then submit-
ted to a patdown for weapons. During the
course of the patdown, Officer Elam removed
a .22 caliber handgun from Tumblin's pocket.

Tumblin did not have a license for the
weapon and was charged with carrying a
handgun without a license. The trial court
denied Tumblin's motion to suppress the

---

1. *See* IC 35–47–2–1.

handgun, and he was convicted in a bench trial.

## DISCUSSION AND DECISION

Tumblin asserts that Officer Elam's seizure of the handgun was the result of an improper investigatory stop. We agree.

In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court established the standard for determining the constitutionality of investigatory stops. The Court ruled that the police may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if, based on specific and articulable facts, the officer has a reasonable suspicion of criminal activity. *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883.[2] In judging the reasonableness of investigatory stops, courts must strike " 'a balance between the public interest and the individual's right to personal security free from arbitrary interference by law [enforcement] officers.' " *Brown v. Texas*, 443 U.S. 47, 50, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979) (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 109, 98 S.Ct. 330, 332, 54 L.Ed.2d 331 (1977)). When balancing these competing interests in different factual contexts, a central concern is "that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field." *Brown*, 443 U.S. at 51, 99 S.Ct. at 2640. Therefore, in order to pass constitutional muster, reasonable suspicion must be comprised of more than an officer's general "hunches" or unparticularized suspicions. *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883.

The Supreme Court's resolution in *Brown* is instructive here. In that case, an El Paso police officer was on routine patrol in a high crime area of the city when he observed Brown and another man walking in opposite directions away from one another in an alley. 443 U.S. at 48, 99 S.Ct. at 2639. The officer pulled his vehicle into the alley and asked Brown to identify himself because, according to the officer, the situation " 'looked suspicious and we had never seen that subject in that area before.' " *Id.* at 49, 99 S.Ct. at 2639. Brown refused to identify himself and was arrested for violating Texas Penal Code Ann. § 38.02(a) (1974), which imposes a criminal penalty if a person refuses to give his name and address to an officer " 'who has lawfully stopped him and requested the information.' " *Id.* (footnote omitted).

The Court reversed Brown's conviction because none of the facts upon which the stop was based supported a reasonable suspicion that Brown was involved in criminal activity. *Id.* at 52, 99 S.Ct. at 2641. Walking in an alley, in a neighborhood with a high incidence of crime, and "looking suspicious," were not sufficient to overcome Fourth Amendment protections against arbitrary and abusive police practices. *Id.* Therefore, with no basis to suspect Brown of engaging in criminal activity, "the balance between the public interest and [an individual's] right to personal security and privacy tilts in favor of freedom from police interference." *Id.*

Applying those principles to the present case, we hold that the officer did not have before him the specific and articulable facts necessary to form a reasonable suspicion of criminal activity on Tumblin's part. The facts before the officer here reveal that he saw two black males[3] who, while walking on the sidewalk in a high crime area of Indianapolis, saw the approaching squad car and turned to walk in the opposite direction. These facts would not prompt a person of reasonable caution to investigate further. Instead, this stop appears to have been made on the officer's "hunch" that two black males turning away from the police in a "bad neigh-

**2.** Although Tumblin does not make an independent state constitutional argument, the *Terry* rationale is applicable in determining the legality of investigatory stops under Article I, Sec. 11 of the Indiana Constitution. *See Taylor v. State*, 639 N.E.2d 1052, 1054 (Ind.Ct.App.1994).

**3.** Officer Elam testified that he recognized Tumblin as someone who he had stopped previously in the same neighborhood for sitting in a parked vehicle with another individual. There is, however, no evidence that any of these "stops" resulted in charges being filed or convictions being rendered. Assuming that Officer Elam had previously arrested Tumblin and that such arrests lead to convictions, it would not have amounted to the reasonable suspicion necessary to stop him in the present case.

borhood" signifies the presence of criminal activity. If the Fourth Amendment is to provide any protection against unreasonable governmental intrusion it should prevent the kind of investigatory stop made here. The color of one's skin, the neighborhood one happens to be in, and the fact that one turns away from the police are not sufficient, individually or collectively, to establish a reasonable suspicion of criminal activity. *See Williams v. State,* 477 N.E.2d 96, 99 (Ind. 1985) (affirming conviction on other grounds but noting that the stop of a black male, at a late hour, in a high crime area, carrying a coat under his arm, was unconstitutional).

In its brief, the State argues that Tumblin's turning and walking away from police amounted to flight from law enforcement; and that such flight merited the investigatory stop. *Appellee's Brief* at 7. We agree that flight from properly identified law enforcement officers is sufficient to justify an investigatory stop. *See Platt v. State,* 589 N.E.2d 222, 226 (Ind.1992) ("Flight at the sight of police is undeniably suspicious behavior."). In the cases cited by the State, however, a common element of flight from law enforcement was the abrupt or hasty departure of suspects which usually took the form of driving away at a high rate of speed, or running away. *See United States v. Jackson,* 741 F.2d 223, 224 (8th Cir.1984) (upholding stop when police drove into an alley where two men ran away yelling " 'It's the police, man, run.' "); *United States v. Pope,* 561 F.2d 663, 668–69 (6th Cir.1977) (upholding stop when suspect fitting drug courier profile ran away after a federal agent identified himself); *People v. Tribett,* 98 Ill.App.3d 663, 53 Ill.Dec. 897, 903, 424 N.E.2d 688, 694 (1981) (upholding stop when suspect darted into an alley after seeing the police); *Platt v. State,* 589 N.E.2d 222, 226 (Ind.1992) (upholding stop after a vehicle parked on the side of the road sped away when police approached to investigate); *Hailey v. State,* 521 N.E.2d 1318, 1320 (Ind.1988) (upholding stop where suspect changed direction and increased his speed after seeing police).

Compared to the actions of the suspects in the cited cases, Tumblin's actions did not amount to flight. He did not increase his speed, run, or dart into an alley. Tumblin did nothing more than turn and walk in the direction that he came from. That does not amount to flight. Therefore, because the State can point to no other facts upon which the officer could form a reasonable suspicion of criminal activity, the police's investigatory stop of Tumblin exceeded constitutional limits.

Reversed.

SULLIVAN and FRIEDLANDER, JJ., concur.