Ronald CARTER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–9707–CR–305.

Court of Appeals of Indiana.

Dec. 30, 1997.

Publication Ordered Feb. 9, 1998.

Robert W. Hammerle, Hammerle Foster Allen & Long–Sharp, Indianapolis, Timothy J. Burns, Indianapolis, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

SHARPNACK, Chief Judge.

This case comes to us on interlocutory appeal. Ronald Carter appeals the trial court's denial of his motion to suppress evidence. Carter raises one issue for our review which we restate as whether the trial court erred in denying his motion to suppress the handgun obtained through a warrantless search of his person. We reverse.

The facts most favorable to the ruling follow. On April 5, 1995, Officer Gary Morrolf entered an Arby's restaurant with other members of the North District Vice Narcotic Squad. All of the officers were dressed in plain clothes. As Morrolf entered the restaurant, he observed four individuals standing in line and recognized one of them as Carter, a person known to him to have had a prior cocaine conviction. Morrolf observed Carter turn toward his direction as the crowd of people entered the restaurant and then turn back toward the counter. Carter subsequently placed his right hand in his coat pocket. Seconds later, Carter turned and walked with "long steps" toward the door Morrolf had entered. Record, pp. 87–88, 95. In doing so, he bumped into Morrolf's partner and exited the restaurant.

Morrolf followed Carter outside and observed him walk toward a car. As Carter reached the car, Morrolf came up behind Carter, reached around and patted the right pocket of Carter's coat. Morrolf felt what he believed to be a gun. Morrolf then pulled Carter's hand from the coat pocket and retrieved the gun. Morrolf then placed Carter under arrest.

Carter filed a motion to suppress all evidence relating to the gun with the trial court. The trial court denied the motion. Carter then filed a motion to reconsider or in the alternative to certify for interlocutory appeal. The trial court denied the motion to reconsider but certified its orders for interlocutory appeal. We accepted jurisdiction.

The sole issue for our review is whether the trial court properly denied Carter's motion to suppress evidence obtained during the warrantless search. Carter asserts that Morrolf's seizure of the handgun was the result of an improper investigatory stop under Article 1, § 11 of the Indiana Constitution and the Fourth Amendment of the United States Constitution. We agree.

A trial court has broad discretion in ruling on the admissibility of evidence. We will not disturb the trial court's ruling absent a showing of an abuse of discretion. *Shinault v. State*, 668 N.E.2d 274, 276 (Ind.Ct. App.1996). A trial court's decision to deny a motion to suppress evidence is reviewed as a matter of sufficiency. *Berry v. State*, 574 N.E.2d 960 (Ind.Ct.App.1991), *reh'g denied, trans. denied*. Therefore, we will neither reweigh the evidence nor judge the credibility of witnesses. *Johnson v. State*, 450 N.E.2d 123, 124 (Ind.Ct.App.1983).

Generally a judicially issued search warrant is a condition precedent to a lawful search. *C.D.T. v. State,* 653 N.E.2d 1041, 1044 (Ind.Ct.App.1995). Thus, searches conducted "outside the judicial process" are *per se* unreasonable, subject to a few well delineated exceptions. *Thompson v. Louisiana,* 469 U.S. 17, 19–21, 105 S.Ct. 409, 410–411, 83 L.Ed.2d 246 (1984); *Fair v. State,* 627 N.E.2d 427, 430 (Ind.1993). The State has the burden of demonstrating the existence of one of these exceptions. *Chimel v. California,* 395 U.S. 752, 762, 89 S.Ct. 2034, 2039, 23 L.Ed.2d 685 (1969); *Fyock v. State,* 436 N.E.2d 1089, 1094 (Ind.1982). One of the recognized exceptions is the *Terry* investigatory stop. *Shinault,* 668 N.E.2d at 276.

In *Terry v. Ohio,* the United States Supreme Court established the standard for determining the constitutionality of investigatory stops. 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Court ruled that the police may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if, based on specific and articulable facts, the officer has a reasonable suspicion of criminal activity. *Id.* at 27, 88 S.Ct. at 1883. In judging the reasonableness of investigatory stops, courts must strike " 'a balance between the public interest and the individual's right to personal security free from arbitrary interference by law [enforcement] officers.' " *Brown v. Texas,* 443 U.S. 47, 50, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979) (quoting *Pennsylvania v. Mimms,* 434 U.S. 106, 109, 98 S.Ct. 330, 332, 54 L.Ed.2d 331 (1977)). When balancing these competing interests in different factual contexts, a central concern is "that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field." *Brown,* 443 U.S. at 51, 99 S.Ct. at 2640. Therefore, in order to pass constitutional muster, reasonable suspicion must be comprised of more than an officer's general "hunches" or unparticularized suspicions. *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883.

We have previously "adopted the *Terry* rationale in determining the legality of investigatory stops under Article 1, § 11 of the Indiana Constitution." [1] *Wilson v. State,* 670 N.E.2d 27, 29 (Ind.Ct.App.1996). We held that "the provisions of Article 1, § 11 of the Indiana Constitution [provide] protections regarding investigatory stops consistent with federal interpretation of protections provided by the Fourth Amendment to the United States Constitution." *Taylor v. State,* 639 N.E.2d 1052, 1054 (Ind.Ct.App. 1994). However, an individual's rights protected under Article I, § 11 are not absolute. *Id.* We must balance competing rights and "look to the reasonableness of the intrusion and permit brief investigatory stops based upon reasonable suspicion of criminal activity." *Id.* Finally, the "reasonable suspicion requirement is satisfied where the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has or is about to occur." *Id.*

The State suggests that Carter was fleeing Morrolf and this was "sufficient to justify an investigatory stop." Appellee's brief, p. 4. Our supreme court has held that flight from a police officer generates suspicious behavior which warrants an investigatory stop. *Platt v. State,* 589 N.E.2d 222, 226 (Ind.1992); *see also Wilson v. State,* 670 N.E.2d 27, 30 (Ind. Ct.App.1996) (holding that flight from properly identified police officers is sufficient to warrant an investigatory stop). However, an individual's actions do not always necessarily constitute flight. *See Tumblin v. State,* 664 N.E.2d 783, 784–785 (Ind.Ct.App.1996) (holding that the "color of one's skin, the neighborhood one happens to be in, and the fact

---

1. Because we have the responsibility of independent constitutional analysis, we decide state constitutional issues independently of federal law. *Taylor v. State,* 639 N.E.2d 1052, 1053 (Ind.Ct. App.1994). We have "the obligation to determine whether an act is protected by the Indiana Constitution, independently of whether the act is protected by federal constitutional guarantees." *Id.* at 1053–1054. However, we are able to apply federal constitutional interpretations to state constitutional provisions but must do so on a case by case basis. *Id.* at 1053. Having previously adopted the federal *Terry* analysis of investigatory stops, we utilize previous interpretations of the Fourth Amendment by Indiana courts to aid in determining the validity of the investigatory stop at issue here.

that one turns away from the police are not sufficient, individually or collectively, to establish a reasonable suspicion of criminal activity").

■ Here, there is not sufficient evidence in the record to support the trial court's conclusion that Carter fled from Morrolf. Although the State characterizes Carter as having "raced for his car," Morrolf's testimony only alludes to Carter taking "long steps." Appellee's brief, p. 2; Record, p. 95. Morrolf testified that he was wearing plain clothes; did not identify himself; did not show Carter a badge; and did not yell "halt" or a similar command. In addition, Morrolf could not remember whether he made eye contact with any of the four individuals at the counter, including Carter. Morrolf followed Carter outside and approached him from behind. Morrolf testified that Carter did not look back. Therefore, the evidence does not support the State's allegations that Carter was in flight. *See Tumblin,* 664 N.E.2d at 784–785; *Wilson v. State,* 670 N.E.2d at 30.

■ We have held that a consideration of the totality of circumstances should be utilized in determining whether the police had reasonable suspicion to believe there is criminal activity afoot. *Wilson,* 670 N.E.2d at 31. This could include but is not limited to:

> "an officer's knowledge, experience and training, whether the conduct is observed in an area known for high crime, other actions of the persons involved, and whether it appears from the officer's perspective that the subject is attempting to avoid the police after visual contact has been made."

*Id.* This necessarily includes a determination of whether Carter's activities were suspicious. Here, in considering the totality of the circumstances, we conclude there was an insufficient basis on which to justify Morrolf's suspicions and subsequent investigatory stop. First, the incident occurred around 6:30 p.m. at an Arby's restaurant.[2] Second,

Morrolf testified that he believed Carter to be in the restaurant for the purpose of ordering food. Morrolf agreed that the "act of standing in line, turning, walking out through a door with people coming in, bumping into somebody, and walking outside" is not an unusual occurrence. Record, p. 93. Third, there were no other individuals involved. Therefore, Carter's actions discussed above are the only actions under consideration. These actions do not support Morrolf's suspicions.

Fourth, although the State argued that it appeared Carter was attempting to avoid the police, Morrolf's own testimony is not strong enough to support that conclusion. Finally, at the suppression hearing, Morrolf testified that he became suspicious when Carter placed his hand in his coat pocket. Morrolf suspected that the pocket contained a weapon or gun because of Carter's prior criminal record. However, Morrolf's mere knowledge of Carter and his prior criminal record was not sufficient to justify the investigatory stop. *See Tumblin,* 664 N.E.2d at 784 n. 3. In *Tumblin,* we concluded that even if an officer had previously arrested an individual and the arrests had led to convictions, "it would not have amounted to the reasonable suspicion necessary to stop [the individual]." *Id.* Here, Morrolf never observed "a gun in [Carter's] pocket or an outline of a gun." Record, p. 92. In sum, it appears that Morrolf's knowledge of Carter was the sole basis and foundation for his suspicions. The facts and the reasonable inferences arising from the facts would not cause an ordinarily prudent person to believe that criminal activity had or was about to occur. Therefore, we conclude that Carter's actions were not suspicious and, because Morrolf did not have reasonable suspicion to believe there was criminal activity afoot, Carter's constitutional protections were violated by the stop. *See Wilson,* 670 N.E.2d at 31. Consequently, the motion to suppress should have been granted.[3]

---

**2.** Our supreme court has stated that "[r]easonable suspicion is more easily attained at 2:15 a.m. in a high crime area." *Johnson v. State,* 659 N.E.2d 116 (Ind.1995). While there was no evidence about the neighborhood in the record, the time of day and location in this case do not

warrant a "more easily attained" reasonable suspicion.

**3.** We held that the "federal constitution operates on states through the provisions of the fourteenth amendment which prohibit a state from falling

For the foregoing reasons, we reverse the trial court's denial of Carter's motion to suppress.

Reversed.

BARTEAU and SULLIVAN, JJ., concur.

### ORDER

This court having heretofore handed down its opinion in this cause on December 30, 1997, marked "NOT FOR PUBLICATION"; and

The appellant, by counsel, having thereafter filed its Petition to Publish Opinion, alleging therein that the decision in this case involves legal and factual issues of substantial public importance and praying the Court to order its decision published, which said petition is more particularly in the following words and figures, to-wit:

(H.I.)

And the Court, having examined said petition and being duly advised, now finds that the appellant's Petition to Publish Opinion should be granted and that this Court's opinion in this appeal should now be ordered published.

IT IS THEREFORE ORDERED as follows:

1. The appellant's Petition to Publish Opinion is granted and this Court's opinion heretofore handed down in this cause on December 30, 1997, marked "NOT FOR PUBLICATION" is now ordered published.

---

below certain minimal standards. If the Indiana Constitution protects the asserted claim, Indiana has not fallen below the federal minimal standards. No further analysis is required." *Taylor,* 639 N.E.2d at 1053. We note that the protections provided by the Indiana Constitution may be more extensive than those provided by its federal constitutional counterparts. *Id.* Were this the case, separate analyses would be necessary. However, as the protections regarding investigatory stops are consistent under both constitutions, a separate analysis of the Fourth Amendment is not necessary. *See Id.* at 1054.