Michael R. **STALLING**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 46A04–9901–CR–33.

Court of Appeals of Indiana.

July 13, 1999.

Donald W. Pagos, Michigan City, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, James B. Martin, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

KIRSCH, Judge

In this interlocutory appeal, Appellant–Defendant, Michael R. Stalling, challenges the trial court's denial of his motion to suppress evidence of cocaine seized through a warrantless patdown search of his person. Stalling raises two issues for our review; however, because we find it dispositive, we address only one:

> Whether the investigatory stop of Stalling by the police was reasonable under the circumstances.

We reverse.

## FACTS AND PROCEDURAL HISTORY

On September 8, 1997, Corporal Mark Swistek of the Michigan City Police Department and two other uniformed officers observed a boy known to be a truant standing at the corner of 9th Street and Willard. The boy was with a group of four to five other young men, including Stalling, who had congregated in an empty lot near the intersection and across the street from a local food mart. This particular intersection was in an area of high crime and had been the site of a number of incidents of robbery, drug dealing, and gun shots. Given that it was around noon on a school day, the officers parked and exited their marked police vehicle in order to speak with the suspected truant. Upon seeing the approaching officers, however, the suspected truant rode away on his bicycle, and the rest of the group began to disperse without incident.

Corporal Swistek recognized Stalling from a previous narcotics investigation involving an informant who had been used without success to attempt a controlled buy from Stalling. As Stalling was turning to leave with the rest of the group, Corporal Swistek observed him move as if to place something into the waistband of his pants near the belt buckle. Corporal Swistek confronted Stalling and asked him what he had just placed in

his waistband. Stalling remained standing in front of Corporal Swistek, but did not say anything. Corporal Swistek then approached Stalling and conducted a patdown search. A plastic baggy containing two small rocks of cocaine was found tucked inside Stalling's waistband behind his pager. Stalling was subsequently arrested and charged with possession of cocaine,[1] a Class D felony.

Thereafter, Stalling moved to suppress the cocaine seized by Corporal Swistek. The trial court denied Stalling's motion to suppress but certified its order for interlocutory appeal. We accepted jurisdiction.

## DISCUSSION AND DECISION

■ Stalling asserts that Corporal Swistek's seizure of the cocaine was the result of an improper investigatory stop. Searches and seizures conducted outside of the judicial process are *per se* unreasonable under the Fourth Amendment to the United States Constitution, subject to a few well-delineated exceptions. *Shinault v. State*, 668 N.E.2d 274, 276 (Ind.Ct.App.1996) (citing *Thompson v. Louisiana*, 469 U.S. 17, 19–20, 105 S.Ct. 409, 410–11, 83 L.Ed.2d 246 (1984); *Fair v. State*, 627 N.E.2d 427, 430 (Ind.1993)). One such exception is the *Terry*[2] investigatory stop and frisk.

■ In *Terry*, the United States Supreme Court held that the police may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if, based on specific and articulable facts, the officer has a reasonable suspicion that criminal activity "may be afoot." *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883. Significantly, the investigatory stop remains a relatively narrow exception to the warrant requirement and cannot be used to provide a haven for unjustified stops. *C.D.T. v. State*, 653 N.E.2d 1041, 1044 (Ind.Ct.App.1995).

■ In judging the reasonableness of investigatory stops, courts must strike " 'a balance between the public interest and the individual's right to personal security free from arbitrary interference by law [enforce-

ment] officers.' " *Brown v. Texas*, 443 U.S. 47, 50, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979) (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 109, 98 S.Ct. 330, 332, 54 L.Ed.2d 331 (1977)). When balancing these competing interests in different factual contexts, a central concern is "that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field." *Brown*, 443 U.S. at 51, 99 S.Ct. at 2640. Therefore, in order to pass constitutional muster, reasonable suspicion must be comprised of more than an officer's general "hunches" or unparticularized suspicions. *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883.

■ We have held that a consideration of the totality of circumstances should be utilized in determining whether the police had reasonable suspicion to believe there is criminal activity afoot. *Wilson v. State*, 670 N.E.2d 27, 31 (Ind.Ct.App.1996). This necessarily includes a determination of whether the defendant's own actions were suspicious. *Carter v. State*, 692 N.E.2d 464, 467 (Ind.Ct.App.1997). In considering the totality of the circumstances here, we conclude there was an insufficient basis on which to justify Corporal Swistek's suspicions and subsequent investigatory stop.

■ Although Stalling, along with the other members of the group, turned and walked away upon seeing the officers, the fact that one turns away from the police in a high crime neighborhood is not sufficient, individually or collectively, to establish a reasonable suspicion of criminal activity. *Tumblin v. State*, 664 N.E.2d 783, 785 (Ind.Ct.App.1996). Moreover, Corporal Swistek's mere knowledge of Stalling and his prior alleged criminal activities was not sufficient to justify the investigatory stop. *See Carter*, 692 N.E.2d at 467; *Tumblin*, 664 N.E.2d at 784 n. 3.

In addition, Corporal Swistek testified that the reason he initially approached the departing Stalling was because Stalling moved as if to place something in the waistband of his pants. However, Corporal Swistek did

---

1. *See* IC 35–48–4–6.

2. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

not see anything in Stalling's hand and conceded that the motion was such that Stalling could have been tucking in his shirt. At the time Corporal Swistek approached Stalling, he was completely unaware of what Stalling could have placed in his waistband, and Stalling had not done or said anything else indicative of criminal activity. When asked by defense counsel whether he could elaborate on the suspicious manner in which Stalling was acting, Corporal Swistek responded, "A fully uniformed police officer is approaching you, you turn to your side to avoid making contact with him, and then you take your hand and place it into your waistband. That to me is suspicious in my line of work." *Record* at 93.

Corporal Swistek's justification for the stop is neither specific nor articulable, and instead, appears to have been made on a "hunch" that Stalling was engaged in some criminal act. Nor do we find Stalling's movement towards his waistline, without more, supportive of a suspicion that criminal activity was afoot. *See Carter,* 692 N.E.2d at 467 (finding no reasonable suspicion where police officer saw defendant place his hand in his coat pocket but never observed a gun or an outline of a gun in defendant's pocket); *cf. Shinault,* 668 N.E.2d at 277 (reasonable suspicion found where defendant's hands and another suspect's hands were up between their bodies and they appeared to be participating in some type of transaction in a high narcotics traffic area); *Stone v. State,* 671 N.E.2d 499, 502 (Ind.Ct.App.1996) (reasonable suspicion found where person was waving down cars and then leaning into them, a common form of drug dealing in the area); *C.D.T.,* 653 N.E.2d at 1043–44 (reasonable suspicion found where person was leaning into a stopped car with hands inside the passenger window and police had received reports of open-air drug dealing in the area). Indeed, merely "looking suspicious" is not sufficient to overcome Fourth Amendment protections against arbitrary and abusive police practices. *Tumblin,* 664 N.E.2d at 784 (citing *Brown,* 443 U.S. at 52, 99 S.Ct. at 2641).

The facts in this case and the reasonable inferences arising from those facts would not cause an ordinarily prudent person to believe that criminal activity had or was about to occur. *See Carter,* 692 N.E.2d at 467. Therefore, we conclude that the police's investigatory stop of Stalling was unreasonable and exceeded constitutional limits. The motion to suppress should have been granted.

Reversed.

DARDEN, J., and BROOK, J., concur.