**Thomas BURKETT, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0004–CR–239.

Court of Appeals of Indiana.

Oct. 10, 2000.

Joseph F. Thoms, Indianapolis, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Adam M. Dulik, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BROOK, Judge

### Case Summary

Appellant-defendant Thomas Burkett ("Burkett") appeals his conviction for possession of marijuana, a Class A misdemeanor.[1] We reverse.

### Issue

Burkett raises one issue for review: whether the trial court should have found that the investigative stop of Burkett was unconstitutional and thus should have granted his motion to suppress evidence.

### Facts and Procedural History

The facts most favorable to the judgment show that on June 5, 1999, Indianapolis Police Department Officer Clifton Jones ("Jones") received a radio report of possible narcotics dealing by three or four African–American men around the 4400 block of East 30th Street. From previous arrests he had made in that area, Jones knew the neighborhood to have a high incidence of drug trafficking. When Jones approached the location at 11:52 p.m., he found a single African–American male, Burkett, standing on a street corner and wearing a hooded sweatshirt with the hood up in seventy-six-degree weather. As Jones pulled up to the curb, Burkett turned and walked away. Jones then exited his police car, ordered Burkett to stop, and proceeded to conduct a pat-down search of Burkett. While Jones was conducting the search, he asked Burkett whether he was carrying any weapons, and Burkett responded that he had a knife in his pocket. After finding and removing the knife, Jones asked him if he had any more weapons. Burkett then confessed that he had "some weed" in his pocket. Once Jones had confiscated a plastic bag with marijuana from Burkett's pocket, he arrested him.

At trial, Jones was the sole witness for the State; he testified that he stopped Burkett because "he was in the area" and "fitted [sic] the description of a black male," (R. at 24), and that he patted him down for safety reasons. At trial, Burkett's attorney moved to suppress all evidence obtained after the investigative stop as the fruit of an unconstitutional search and seizure, but the court overruled the motion. Burkett was convicted of possession of marijuana as a Class A misdemeanor in a bench trial on August 20, 1999.

### Discussion and Decision

Burkett's illegal search and seizure claim arises under the Fourth Amendment to the United States Constitution, which imposes a standard of reasonableness upon the discretion of law enforcement agents in order to protect individual privacy from arbitrary inva-

1. See Ind.Code § 35–48–4–11.

sions. *See Delaware v. Prouse,* 440 U.S. 648, 653–54, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Searches conducted without a warrant from a judge or magistrate are per se unreasonable under the Fourth and Fourteenth Amendments unless they fall into a few exceptional categories. *See L.A.F. v. State,* 698 N.E.2d 355, 355 (Ind.Ct.App.1998). We strictly construe exceptions to the warrant requirement. *See Ceroni v. State,* 559 N.E.2d 372, 374 (Ind.Ct.App.1990). The State has the burden of proving that a presumptively illegal search falls within one of the well delineated exceptions. *See Hanna v. State,* 726 N.E.2d 384, 388 (Ind.Ct.App. 2000).

■■■ The exception at issue here[2] is the investigative stop exception, "whereby a police officer can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion, supported by articulable facts, that criminal activity may be afoot, even if the officer lacks probable cause." *Santana v. State,* 679 N.E.2d 1355, 1359 (Ind.Ct.App.1997). Even Jones' brief detention of Burkett for questioning—short of a traditional arrest—is a seizure of his person implicating his Fourth Amendment rights. *See Brown v. Texas,* 443 U.S. 47, 50, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *Green v. State,* 719 N.E.2d 426, 429 (Ind.Ct.App.1999). The facts supporting a reasonable suspicion that criminal activity is afoot must rise to "some minimum level of objective justification" for the temporary detention of a person to be valid. *Reeves v. State,* 666 N.E.2d 933, 936 (Ind.Ct.App.1996). Even if justified, a reasonable suspicion only permits the officer to temporarily freeze the situation for inquiry and does not give him all the rights attendant to an arrest. *See State v. Smith,* 638 N.E.2d 1353, 1355 (Ind.Ct.App.1994). The totality of the circumstances are to be considered in evaluating whether an officer had a reasonable suspicion in a particular case. *See Wilson v. State,* 670 N.E.2d 27, 31 (Ind.Ct.App. 1996). Although we generally review a trial court's decision to admit evidence despite a motion to suppress under an abuse-of-discretion standard, *see C.D.T. v. State,* 653 N.E.2d 1041, 1044 (Ind.Ct.App.1995), "the ultimate determination of reasonable suspicion is reviewed *de novo.*" *Green,* 719 N.E.2d at 429.

The State points to four facts which, it claims, create a totality of circumstances giving rise to a reasonable suspicion of criminal activity. Burkett was in a neighborhood known for drug trafficking at a late hour. He was wearing a hooded sweatshirt in seventy-six-degree weather. He turned and walked away when Jones pulled his patrol car up to the corner on which Burkett was standing. His racial identity was the same as that of the group of men who someone complained were dealing in narcotics in the area where Burkett was located.

■■■ At the outset, we note that neither presence in a high-crime neighborhood

**2.** Burkett does not challenge the warrantless pat-down search of his body, allegedly performed by Jones for officer safety; he only challenges the fact that he was stopped for investigation and questioning. We note that a careful reading of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), as well as other case law interpreting it, *see, e.g., Minnesota v. Dickerson,* 508 U.S. 366, 373, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); *Johnson v. State,* 710 N.E.2d 925, 928 (Ind.Ct. App.1999); *Wilson v. State,* 670 N.E.2d 27, 29 (Ind.Ct.App.1996), reveals a fine distinction between (1) facts supporting a brief investigative detention (reasonable suspicion of criminal activity) and (2) facts justifying an officer's pre-arrest search of a suspect's body and area of immediate control in order to dispel a fear of being harmed by weapons during the course of the investigation (reasonable belief that the suspect is armed *and* dangerous). An officer could have a reasonable belief that he needs to stop and question some suspect without being justified in the belief that his safety is at risk in doing so. This distinction is important because "[w]e will not condone the use of a *Terry* protective search for weapons as a mere pretext to search for evidence" during the course of a legitimate investigative stop. *D.D. v. State,* 668 N.E.2d 1250, 1254 (Ind.Ct.App.1996).

alone, *see Brown*, 443 U.S. at 52, 99 S.Ct. 2637; *Green*, 719 N.E.2d at 429, nor an anonymous tip alone that is *not confirmed in significant aspects, see Lampkins v. State*, 682 N.E.2d 1268, 1271 (Ind.1997), may constitute a reasonable suspicion. Also, we have differentiated between situations in which some person makes an abrupt, hasty attempt to avoid contact with law enforcement and ones in which the alleged flight consists of nothing more than turning and walking in another direction. *See Tumblin v. State*, 664 N.E.2d 783, 785 (Ind.Ct.App.1996). Furthermore, Indiana cases in which rapid flight supported a finding of reasonable suspicion are distinguishable on that basis. *See Wilson*, 670 N.E.2d at 28–29 (after hiding between two houses, the defendant ran from the police and hid a balled-up piece of paper in his mouth); *Platt v. State*, 589 N.E.2d 222, 225 (Ind.1992) (defendant fled in car with great haste when a deputy pulled up behind the car sitting on the side of a country road at 3:00 a.m.); *Hailey v. State*, 521 N.E.2d 1318, 1319 (Ind.1988) (when defendant walking down street at 1:30 a.m. noticed an officer was watching him, he changed the direction in which he was walking and accelerated his pace).

▇▇▇ Still, the State contends that the totality of the circumstances justifies a reasonable suspicion by Jones. However, we find that the totality of the circumstances falls strikingly close to that in *Tumblin*, 664 N.E.2d 783, where we determined that an officer did not have a reasonable suspicion to stop two black males who were walking in a high-crime area and turned to walk in the opposite direction when they came upon an approaching squad car. In arriving at our decision in *Tumblin*, we stated that "[t]he color of one's skin, the neighborhood one happens

to be in, and the fact that one turns away from the police are not sufficient, *individually or collectively*, to establish a reasonable suspicion of criminal activity." *Id.* at 785 (emphasis added). *Cf. Williams v. State*, 477 N.E.2d 96, 98 (Ind.1985) (defendant walking on a sidewalk in a high-crime district at 1:30 a.m., carrying an unidentifiable object which turned out to be a coat was detained unconstitutionally) [3] *and Reeves v. State*, 666 N.E.2d 933, 934 (Ind. Ct.App.1996) (at 3:00 p.m. in a neighborhood known for drug trafficking and shooting, officer illegally detained defendant who—as the officer drove by – began to walk with another black male juvenile who avoided eye contact with and took quick, furtive peeks at the officer).

Although the facts in this case go incrementally beyond those in *Tumblin* in a couple of respects, we find that they do not go far enough beyond *Tumblin* to establish a reasonable suspicion.[4] First, in regard to the complaint that Jones received about three or four African–American males dealing in narcotics, we note that the description of the people involved was neither very specific nor matched Burkett precisely, since he was present at the corner alone. This is important because our supreme court has said that "[w]hen *significant aspects* of [a] caller's predictions are verified, there [is] reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop." *Lampkins*, 682 N.E.2d at 1271 (emphasis added). Here, Jones testified that he stopped Burkett for investigation because Burkett "was in the area" and "fitted [sic] the description of a black male." (R. at 24.) The specificity level of the tip relied upon by Jones distinguishes this case from oth-

---

3. Though our supreme court ruled that the investigative stop of Williams exceeded constitutional limits, it upheld his convictions since there was enough additional evidence not obtained as a result of the illegal *Terry* stop to render the error in admitting evidence harmless. *See id.* at 99.

4. In examining the totality of the circumstances, we must look not only at the quantity of facts supposedly giving rise to a reasonable suspicion but also at the quality of those facts. *See Johnson v. State*, 659 N.E.2d 116, 121 (Ind.1995).

ers in which a person's similarity to a description of some suspect gave rise to a valid, legal investigative stop that eventually led to the discovery of incriminating evidence. *See Lampkins*, 682 N.E.2d at 1271 (anonymous tipster described a brown Impala with a specific license plate number); *Owens v. State*, 497 N.E.2d 230, 232 (Ind.1986) (robbed pharmacist described thirty-five-year-old, 5"7' black male wearing a green shirt and brown hat and carrying a green bag, and police came upon a black male in his thirties wearing a green shirt and tan hat and carrying a burgundy bag); *Johnson v. State*, 710 N.E.2d 925, 927 (Ind.Ct.App.1999) (officer who witnessed random shooting described the fleeing suspect as a 5"10'—6"0' black male in his late teens or early twenties wearing dark clothing); *Smith*, 638 N.E.2d at 1354 (truck driver reported gray Dodge Dakota pickup with specific license plate number weaving on interstate highway).

Second, in regard to Burkett's attire, we find that it adds little to the totality of the circumstances. While Jones mentioned his attire during the State's case in chief, the State did not meet its burden of specifically linking it to potential criminal activity calling for investigation, and of course, the State has the burden of showing how facts justify one of the strictly construed exceptions to the warrant requirement. *See Hanna v. State*, 726 N.E.2d 384, 388 (Ind.Ct.App.2000). Though the sweatshirt may seem odd in light of the temperature, we decline to hold that people compromise their Fourth Amendment rights simply by wearing clothing that is baggy or that is somewhat warmer than would appear to be in season, especially not when the article of clothing is as mundane as a sweatshirt.[5]

Pursuant to the exclusionary rule from *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), all the fruits of Burkett's detainment should have been suppressed. The erroneous admission of evidence was a reversible error since Burkett's substantial rights were clearly prejudiced. *See Martin v. State*, 622 N.E.2d 185, 188 (Ind.1993). Retrial is not barred by the erroneous admission of evidence unless additional properly admitted evidence is legally insufficient to support the conviction; in the latter situation, double jeopardy forbids a retrial. *See Ground v. State*, 702 N.E.2d 728, 732 (Ind.Ct.App. 1998). Because the State has no evidence that Burkett committed the crime of possession of marijuana other than the evidence resulting from the unconstitutional *Terry* stop, we will not remand this case for a new trial.

Reversed.

SULLIVAN, J., and NAJAM, J. concur.

---

5. There will certainly be situations in the future, however, where an article of clothing may be significant to an analysis of the totality of circumstances.