Matthew **BRIDGEWATER,**
Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A04–0211–CR–541.

Court of Appeals of Indiana.

Aug. 20, 2003.

Terry R. Curry, Sommer Barnard Ackerson, P.C., Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Matthew Bridgewater brings this interlocutory appeal challenging the denial of his motion to suppress evidence discovered during a pat-down search. We reverse.

### Issue

Bridgewater raises two issues for our review, but we address only the dispositive issue of whether the State failed to establish specific and articulable facts showing that the police had a reasonable suspicion of criminal activity when they stopped him.[1]

---

1. The second issue Bridgewater raises is whether the scope of the warrantless search

## Facts

At approximately 11:30 p.m. on May 9, 2002, Indianapolis Police Officer Brady Ball patrolled the area of the 700 block of Fairfield Avenue with Officer Tina Songer in uniform but in an unmarked car. They were investigating complaints regarding narcotics dealing at an apartment complex in that block. This area was known to the officers as a high crime area, and Officer Ball had previously made several arrests involving narcotics and handguns at the location.

While parked in the police car, the officers observed Bridgewater standing outside the apartment building and talking with an older man and a woman. After observing the three people for several minutes, the officers drove by the building. Bridgewater ran inside the building, closed the door, and watched the officers from an upstairs window.

After a few minutes, Bridgewater came back outside and continued to talk to the older man who remained outside. The officers then walked down the sidewalk toward the building. When the officers approached, Bridgewater looked at them and then ran inside the building again. The officers had talked to the older man for a few minutes when Bridgewater and another man came out of the building and walked past the officers.

Officer Ball stopped Bridgewater and asked him why he had run when he saw them. Officer Ball instructed Bridgewater to remove his hands from his jacket pockets. Bridgewater initially complied but then put his hands back in his pockets. At that point, Officer Ball decided to perform a pat-down search for weapons to protect his safety. While Officer Ball was patting down Bridgewater's pants, he felt a large

bag. Based on the feel and packaging of the bag, it was "obvious" and immediately apparent to Officer Ball that the object was a bag of cocaine. Tr. p. 22. Officer Ball placed Bridgewater under arrest and removed a bag that contained cocaine and marijuana from his pants.

The State charged Bridgewater with possession of cocaine, a Class C felony, possession of marijuana, a Class A misdemeanor, and resisting law enforcement, a Class A misdemeanor. Bridgewater filed a motion to suppress evidence recovered during the pat-down search. After conducting an evidentiary hearing, the trial court denied the motion. Bridgewater now brings this interlocutory appeal challenging the denial.

## Analysis

The admissibility of evidence is within the trial court's sound discretion, and we will not disturb the trial court's determination absent an abuse of that discretion. *Smith v. State,* 780 N.E.2d 1214, 1216 (Ind. Ct.App.2003), *trans. denied.* We review the denial of a motion to suppress in a manner similar to other sufficiency matters except that we consider the evidence most favorable to the trial court's ruling together with any uncontroverted evidence to the contrary. *Id.*

██ An officer has the authority to briefly stop a person for investigatory purposes if the officer has reasonable suspicion of criminal activity. *Williams v. State,* 754 N.E.2d 584, 587 (Ind.Ct.App. 2001), *trans. denied.* Reasonable suspicion exists where the facts known to the officer and the reasonable inferences therefrom would cause an ordinarily prudent person to believe that criminal activity has or is about to occur. *Id.* The facts supporting a reasonable suspicion that

exceeded the bounds of a permissible pat-down for weapons. We need not address this

issue given our holding today that the stop itself was unconstitutional.

criminal activity is afoot must rise to "some minimum level of objective justification" for the temporary detention of a person to be valid. *Jefferson v. State*, 780 N.E.2d 398, 404–05 (Ind.Ct.App.2002). Although reasonable suspicion requires more than inchoate and unparticularized hunches, it is a less demanding standard than probable cause and requires a showing of "considerably less" proof than that required to establish wrongdoing by a preponderance of the evidence. *Cardwell v. State*, 666 N.E.2d 420, 422 (Ind.Ct.App. 1996), *trans. denied.* Reasonable suspicion is determined on a case-by-case basis by looking at the totality of the circumstances. *Person v. State*, 764 N.E.2d 743, 748 (Ind.Ct.App.2002), *trans. denied.*

 At the outset, we note that presence in a high-crime neighborhood alone may not constitute reasonable suspicion. *Crabtree v. State*, 762 N.E.2d 241, 246 (Ind.Ct.App.2002). However, presence in a high-crime area can be considered as a factor in the totality of the circumstances confronting an officer at the time of a stop. *Id.* Similarly, avoiding the police or turning away from them is also not enough by itself to constitute reasonable suspicion. *See, e.g., Stalling v. State*, 713 N.E.2d 922, 924 (Ind.Ct.App.1999) ("the fact that one turns away from the police in a high crime neighborhood is not sufficient, individually or collectively, to establish a reasonable suspicion of criminal activity").

However, we note the Supreme Court's comment that "[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion. Headlong flight—wherever it occurs—is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000) (citations omitted). The Supreme Court noted that allowing police

and the courts to consider flight as a factor in determining whether reasonable suspicion existed does not conflict with the principle that an individual has the right to ignore police and go about his business if the officer approaches an individual without probable cause. The Court explained:

> [A]ny "refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure." But unprovoked flight is simply not a mere refusal to cooperate. Flight, by its very nature, is not "going about one's business"; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning.

*Id.* at 125, 120 S.Ct. at 676 (citations omitted).

Judicial interpretation of what constitutes "reasonable suspicion" is fact-sensitive. *Wilson v. State*, 670 N.E.2d 27, 30–31 (Ind.Ct.App.1996). This is clearly evident in a brief survey of the holdings of some of the cases addressing whether presence in a high-crime neighborhood and/or turning away from police constitute reasonable suspicion to justify a stop of a defendant.

In *Clenna v. State*, 782 N.E.2d 1029 (Ind.Ct.App.2003), the police received a report of suspicious people in a drug store by a store clerk who was afraid they were going to rob the store because they had been inside of the store for over thirty minutes, kept making advances on the cash register, and would retreat to the back of the store whenever someone entered the store. The responding officer was familiar with the drug store because he had been called there on previous reports of shoplifting and robberies. When

the officer arrived at the drug store, the store clerk directed him to the aisle where the suspicious men were located and watching the cash register. The officer then began walking down the aisle where Clenna was located, and when Clenna observed the officer, he began to quickly walk away. He ignored the officer's initial request for him to stop. We held that when taken together, all of the facts known to the officer and the reasonable inferences drawn from them constituted reasonable suspicion that criminal activity was about to occur and justified a brief investigatory stop. *Id.* at 1033.

In *Bentley v. State,* 779 N.E.2d 70, 77 (Ind.Ct.App.2002), the police officer observed Bentley engaged in some type of transaction while kneeling down in front of a truck; the transaction occurred in an area known for narcotics dealing and possession; and the officer thought he had arrested Bentley before on a narcotics crime. The officer had arrested persons in the past for dealing narcotics out of a plastic bag that contained other items like clothing. We held that the officer in this case had reasonable suspicion to seize Bentley and investigate what he was doing. *Id.*

In *Hailey v. State,* 521 N.E.2d 1318, 1320 (Ind.1988), a police officer was informed prior to beginning his patrol that if he encountered Hailey to arrest him on suspicion of burglary. At approximately 1:30 a.m., as the officer was on patrol, he observed a person walking down a street in the business district. The officer did not recognize him, but did notice he was acting suspiciously. When Hailey noticed that the officer was watching him, he changed direction and increased his speed. The officer stopped appellant and asked him for identification. When Hailey identified himself, the officer realized he was the person to be arrested. Our supreme court found that there was sufficient evidence to justify the initial investigatory stop. *Id.*

In *Person v. State,* 764 N.E.2d 743, 748–49 (Ind.Ct.App.2002), Person was sitting on the porch of a house where police had served a narcotics search warrant a few days earlier and police had received numerous complaints about narcotics activity. Two men were engaged in a conversation with the driver of a car parked in front of the residence, and the police officer recognized one of the men from his previous narcotics arrest at that house. When one of the men saw the officer approach in his police car, he appeared to inform the other man of his presence. At that point, the driver immediately pulled away. When the officer stopped in front of the house, the two men began to walk away and continued to do so after being asked to stop. Person looked at the officer, who was in full uniform and driving a marked police car, and ran across the porch, through the house, and out the back door even after being told to stop by the officer. Under the totality of these circumstances, we found that the officer had reasonable suspicion to believe that Person may have been involved in criminal activity.

In *Shinault v. State,* 668 N.E.2d 274, 277 (Ind.Ct.App.1996), we held that an officer was justified in making an investigatory stop of a defendant where the officer observed the defendant involved in some type of transaction, the transaction occurred in a well-known drug area, the officer knew that the person engaged in the transaction with the defendant had a history of criminal activity, and the two men ran when they saw the officer.

In *State v. Belcher,* 725 N.E.2d 92, 95 (Ind.Ct.App.2000), *trans. denied,* Belcher was observed walking along the street at 3 a.m. in a high crime area near a pay phone frequently used by drug dealers. Al-

though it was hot and humid, he wore a nylon sweat jacket. As he walked, he kept his hands in his jacket pockets, changed direction when he saw a police car and did not look up at the officers as they approached. Finally, when an officer asked to speak with him, Belcher ran away, and did not heed the officer's command to stop. We held that none of those circumstances, when considered individually, gave rise to a reasonable suspicion of criminal activity. *Id.* When viewed in totality, however, we concluded that Belcher's flight, combined with the other facts, presented the police officers with a reasonable suspicion of criminal activity. *Id.*

However, our supreme court has determined that the presence of a defendant walking in a "high crime" area at 1:30 a.m. with a package does not rise to the level of reasonable suspicion. *Williams v. State,* 477 N.E.2d 96, 99 (Ind.1985). Likewise, we have held that an officer lacked reasonable suspicion to make an investigatory stop where the defendant and a companion were standing in a high crime area and avoided eye contact with the officer. *Reeves v. State,* 666 N.E.2d 933, 936 (Ind. Ct.App.1996). We later held that the defendant's presence in a high crime area combined with his conduct of turning away and making movements toward his waistline did not sustain a suspicion that criminal activity was afoot. *Stalling,* 713 N.E.2d at 925. Similarly, we have held that the defendant's actions of turning away from a police officer and putting something down his pants was not sufficient conduct to justify an investigatory stop. *Webb v. State,* 714 N.E.2d 787, 789 (Ind.Ct.App.1999). Another panel of this court has concluded that an officer lacked reasonable suspicion to conduct an investigatory stop of a defendant when he encountered the defendant on a farm lane that led to an area known to have been used to store marijuana. *Green v. State,* 719 N.E.2d 426, 429–30 (Ind.Ct.App.1999).

In *Polk v. State,* 739 N.E.2d 666, 668 (Ind.Ct.App.2000), the police stopped Polk because he was walking in a high crime area and turned away from the police as they passed him. We found that such circumstances did not rise to a reasonable suspicion to believe that criminal activity has or is about to occur. *Id.* As a result, we held that the police lacked reasonable suspicion to conduct an investigatory stop of Polk and the stop was unlawful.

In *Tumblin v. State,* 664 N.E.2d 783 (Ind.Ct.App.1996), an officer stopped two individuals who had turned and walked the opposite direction when they saw a police vehicle. The officer pulled along the two individuals and asked them to place their hands on the police car. Tumblin initially refused to comply but then submitted to a pat-down search that revealed a handgun. We reversed his conviction on appeal, holding that the trial court erroneously denied Tumblin's motion to suppress because the fact that the two individuals turned and walked in the opposite direction upon seeing the police vehicle did not constitute specific and articulable facts necessary to form a reasonable suspicion of criminal activity. *Id.* In so holding, we reasoned:

> If the Fourth Amendment is to provide any protection against unreasonable governmental intrusion it should prevent the kind of investigatory stop made here. The color of one's skin, the neighborhood one happens to be in, and the fact that one turns away from the police are not sufficient, individually or collectively, to establish a reasonable suspicion of criminal activity.

*Id.* at 785 (citation omitted).

In *Burkett v. State,* 736 N.E.2d 304, 306 (Ind.Ct.App.2000), Burkett was in a neighborhood known for drug trafficking at a

late hour. He was wearing a hooded sweatshirt in seventy-six-degree weather. He turned and walked away when the officer pulled his patrol car up to the corner on which Burkett was standing. His racial identity was the same as that of the group of men who someone complained were dealing in narcotics in the area where Burkett was located. We found that although the facts went incrementally beyond those in *Tumblin*, they did not go far enough beyond *Tumblin* to establish a reasonable suspicion for the investigatory stop. *Id.* We noted that the complaint the officer received about three or four African–American males dealing in narcotics was neither very specific nor matched Burkett precisely given he was present at the corner alone. *Id.* We also noted that Burkett's attire added little to the totality of the circumstances because the State did not meet its burden of specifically linking it to potential criminal activity calling for investigation. *Id.* at 307–08.

In *Williams v. State*, 745 N.E.2d 241, 245 (Ind.Ct.App.2001), a police officer observed Williams and another man talking and appearing to exchange something and then walking off in different directions after noticing the police officer. The officer did not see the items that Williams and the other man exchanged, thus the only basis for stopping Williams was the fact that he and the man exchanged something and then walked away. On appeal, we noted that alone, Williams' act of walking away was an insufficient basis for an investigatory stop. *Id.* We further noted that the evidence concerning the "exchange" between Williams and the other man was equally insufficient to support the stop because the officer had no idea what they had exchanged. *Id.* We reasoned that the officer's "suspicion was based merely on a hunch that Smith and Williams were involved in criminal activity and this is not a

sufficient basis for an investigatory stop." *Id.*

Although the decision as to whether there are enough facts to establish a reasonable suspicion of criminal activity is necessarily made on a case-by-case basis, a review of these cases is instructive as to what facts have been found to be sufficient. We find that in this case, the facts are not sufficient in light of the holdings in the other cases. We recognize that the officers were watching the apartment building because of complaints about drug dealing and that the building was located in a high-crime-area. We also do not minimize the fact that Bridgewater twice fled into the building after seeing the officers. However, the officers did not observe any sort of transaction or interaction among Bridgewater and the other two people standing with him other than talking. He was not carrying anything unusual, nor was he doing anything else suspicious. The mere fact that he walked or ran from the police into the building is simply not enough to meet the State's burden in this case. The stop was unconstitutional, and the trial court should have granted Bridgewater's motion to suppress the evidence recovered during the subsequent search.

### Conclusion

The evidence was not sufficient to establish a reasonable suspicion that Bridgewater was engaged in illegal activity when Officer Ball stopped him. Thus, the motion to suppress should have been granted. We reverse.

Reversed.

RILEY, J., and SHARPNACK, J., concur.