**David CASTNER, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee.**

**No. 49A02–0412–CR–1045.**

Court of Appeals of Indiana.

Jan. 12, 2006.

Bruce E. Andis, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, for Appellee.

**OPINION**

SULLIVAN, Judge.

In this consolidated appeal, Appellant, David Castner, challenges his conviction for Reckless Possession of Paraphernalia as a Class D felony[1] and, under a separate cause, his conviction for Theft as a Class D felony.[2] Upon appeal, Castner claims that inadmissible evidence was used against him in both trials, that there was insuffi-

---

1. Ind.Code § 35–48–4–8.3 (Burns Code Ed. Repl.1998). The current amended version of this section is found at Ind.Code § 35–48–4–8.3 (Burns Code Ed. Repl.2004).

2. Ind.Code § 35–43–4–2 (Burns Code Ed. Repl.2004).

cient evidence supporting his possession conviction, and that his sentence on his possession conviction was improperly enhanced.

We affirm in part, reverse in part, and remand with instructions.

On June 24, 2003, at approximately 9:00 a.m., Officer Christopher Lawrence of the Indianapolis Police Department was dispatched to 2200 East 10th Street, where a white male wearing a white tank top and blue jeans was reportedly selling pills to children. There was no evidence as to who had reported this information; Officer Lawrence was relying solely upon the dispatch report. Officer Lawrence testified that the above address is at an intersection, with a Short Stop Market on the north side of the intersection and a Clark gas station on the south side. He further testified the address was in a high-crime area. Upon arriving at the intersection, Officer Lawrence saw an individual matching the description standing in the east end of the parking lot of the Clark gas station. Although there were children "in the neighborhood," Officer Lawrence testified they were not around the individual, and he did not observe the individual making any transactions with them. Transcript at 14. He also testified he did not recall the individual making any threatening gesture. Officer Lawrence approached the individual, later determined to be Castner, and asked him to take his hands out of his pockets. According to Officer Lawrence, Castner initially did not remove his hands from his pockets. Officer Lawrence testified he was familiar with the area, he had participated in several narcotics investigations there, and that his experience as a police officer had proved that weapons were often present where narcotics were

involved. Out of concern that Castner was possibly concealing a weapon, Officer Lawrence proceeded to perform a pat-down search. Officer Lawrence took Castner's hands out of his pockets and conducted a full-body pat down. While patting Castner down, Officer Lawrence saw in "plain view" a metal pipe with "burnt mesh or charboy" in Castner's right utility pocket. Transcript at 26. He removed the pipe. The pipe was later determined to contain cocaine residue.

On June 25, 2003, Castner was charged under Cause Number 49G14–0306–FD–103073 with possession of cocaine and reckless possession of paraphernalia. Following an August 16, 2004 bench trial, Castner was found guilty of reckless possession of paraphernalia as a Class A misdemeanor. After a November 15, 2004 enhancement hearing, the court enhanced[3] Castner's conviction to a Class D felony and sentenced him to 545 days.

On October 5, 2003, Officer Joshua Barker of the Indianapolis Police Department was driving southbound in the 900 block of Oxford Street when he observed a white male, who was wearing a dark hooded jacket, blue jeans, and white tennis shoes, walking northbound through the parking lot of an apartment complex at 2811 East 10th Street. Officer Barker noticed that the individual's left hand was holding the opening of his coat and his right hand was "buried" inside of his coat. Transcript at 86. Officer Barker testified that he made eye contact with the individual, who then immediately placed his head down, turned in an opposite direction, and proceeded northwest through the parking lot at a much quicker pace. Officer Barker turned his car around, briefly losing

---

**3.** Castner's sentence was enhanced pursuant to I.C. § 35–48–4–8.3(c)(3) (Burns Code Ed. Repl.1998) due to the court's finding that he had a prior conviction under the same section of the statute.

sight of the individual. Officer Barker testified he later found him in the Village Pantry parking lot at 1001 North Rural Street. According to Officer Barker, the south side of that parking lot has a fenced-in area with a dumpster inside. Officer Barker found the individual standing inside the fenced-in area, behind the dumpster. Officer Barker testified that the individual had taken off his dark hooded jacket but was still wearing his blue jeans and tennis shoes. The jacket was lying on the ground next to him, and a screwdriver was lying next to the jacket. Officer Barker testified he noticed a CD player stuffed into a C-bracket on the side of the dumpster. Further inspection revealed a remote control for the CD player and a book of CDs. According to Officer Barker, he read the individual, who was later determined to be Castner, his Miranda rights.[4] At some point Officer Barker asked Castner what he was doing behind the dumpster, and Castner's reported response was that he was urinating. At some later point, Officer Barker placed Castner in handcuffs. Castner remained on the ground and in handcuffs until Officer Anderson, who had been driving around the neighborhood looking for a damaged car, arrived with Antonio Romero, whose girlfriend's van had been broken into.[5] Romero identified the CD player and CDs as his. At some point after Romero arrived, Officer Barker asked Castner about the CD player and CDs. Castner answered that he had stolen the CD player and CDs from Romero's van.

On October 6, 2003, Castner was charged with criminal mischief and theft under Cause Number 49G14–0310–FD–172190. Following a bench trial, Castner was convicted of theft as a Class D felony. He was sentenced to 545 days, suspended, to be served consecutively with his sentence on the previous paraphernalia possession charge.

Castner claims upon appeal that there was evidence used against him in both trials which should have been suppressed, that there was insufficient evidence supporting his reckless possession conviction, and that his sentence on his possession conviction was improperly enhanced.

Our standard of review of rulings on the admissibility of evidence is the same whether the challenge is made by a pretrial motion to suppress or by a trial objection. *Ackerman v. State,* 774 N.E.2d 970, 974 (Ind.Ct.App.2002), *trans. denied.* We look for substantial evidence of probative value to support the trial court's decision. *Swanson v. State,* 730 N.E.2d 205, 209 (Ind.Ct.App.2000), *trans. denied.* We consider the evidence most favorable to the court's decision and any uncontradicted evidence to the contrary. *Id.*

*Cause Number 49G14–0306–FD–103073*

 We first address Castner's claim that evidence leading to his paraphernalia possession conviction was obtained in violation of his Fourth Amendment rights against unreasonable searches and seizures. Under the federal constitution, an officer may briefly detain an individual if the officer observes unusual conduct which

---

**4.** It is difficult to determine what Officer Barker said to Castner upon arriving at the dumpster, and what Castner's response was, if any, before Officer Barker read Castner his Miranda rights. It is also unclear whether Officer Barker saw the contents of the dumpster before or after "detaining" Castner, and whether this "detention" was pursuant to his

reading Castner his Miranda rights or was of a different nature.

**5.** There is a dispute as to how long Castner was in handcuffs. Officer Barker testified it was for "minutes." Transcript at 101. Castner testified it was for approximately fifteen to twenty minutes.

leads him to conclude, in light of his experience, that criminal activity is afoot. *Id.* (citing *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). The officer must have reasonable suspicion that such criminal activity is afoot. *Bridgewater v. State,* 793 N.E.2d 1097, 1099 (Ind.Ct. App.2003), *trans. denied.* Reasonable suspicion exists where the facts known to the officer and the reasonable inferences therefrom would cause an ordinarily prudent person to believe that criminal activity has or is about to occur. *Id.* Facts supporting a reasonable suspicion that criminal activity is afoot must satisfy " 'some minimum level of objective justification' " for the temporary detention of a person to be valid. *Id.* at 1099–1100 (quoting *Reeves v. State,* 666 N.E.2d 933, 936 (Ind.Ct.App.1996)). In order to establish reasonable suspicion, law enforcement officers need not have the level of suspicion necessary for probable cause, but they must have more than an inchoate and unparticularized suspicion or hunch. *State v. Belcher,* 725 N.E.2d 92, 94 (Ind.Ct.App. 2000), *trans. denied.* Reasonable suspicion is determined on a case-by-case basis by looking at the totality of the circumstances. *Bridgewater,* 793 N.E.2d at 1100.

As a general rule, an anonymous tip alone is not likely to constitute the reasonable suspicion necessary for a valid Terry stop. *Lampkins v. State,* 682 N.E.2d 1268, 1271 (Ind.1997); *Beverly v. State,* 801 N.E.2d 1254, 1261 (Ind.Ct.App.2004), *trans. denied.* If an anonymous tip is " 'suitably corroborated,' " however, it may bear " 'sufficient indicia of reliability' " to provide the reasonable suspicion necessary to justify a Terry stop. *Beverly,* 801 N.E.2d at 1261 (quoting *Florida v. J.L.,* 529 U.S. 266, 270, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000)). Reasonable suspicion "requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Florida,* 529 U.S. at 272, 120 S.Ct. 1375.

The facts in this case indicate that Officer Lawrence, who had received a report from dispatch, was essentially acting upon an anonymous tip when he found Castner in a white shirt and jeans at the reported location. The assertion of illegality in the tip was not independently corroborated, however. Castner was not selling drugs to children, nor did he appear to be. In fact, there were no children in the immediate vicinity. The only other facts cited by Officer Lawrence to justify his detention of Castner were that he was in a high-crime area and that Castner's hands were in his pockets. Presence in a high-crime area alone does not give rise to a reasonable suspicion of criminal activity, nor does justifiable or innocent conduct such as keeping one's hands in one's pockets. *Bridgewater,* 793 N.E.2d at 1100–02. Under the totality of the circumstances, the facts that Castner was in a reputedly high-crime area with his hands in his pockets could not have given Officer Lawrence more than an unparticularized hunch that criminal activity might be afoot. Accordingly, we conclude Officer Lawrence did not have reasonable suspicion to justify his detention of Castner, and that the pipe he found during that detention was therefore inadmissible.

Even if the evidence were not procured in violation of Castner's Fourth Amendment rights, however, we conclude there was insufficient evidence to support his conviction for reckless possession of paraphernalia under Ind.Code § 35–48–4–8.3. Indiana Code § 35–41–2–2(c) (Burns Code Ed. Repl.2004) provides that conduct is reckless if it is done in "plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." We have previously

held that a showing of recklessness is impossible without a showing of possible harm. *C.A. Bean v. State*, 818 N.E.2d 148, 151 (Ind.Ct.App.2004). The State argues that such possible harm in this case is demonstrated by the fact that there were children in the neighborhood, that the pipe was visible in Castner's pocket, and that any child could simply have reached into his pocket and been exposed to cocaine. In previously addressing this issue, we have stated that, "[W]e do not see how possession of paraphernalia is made any more reckless by the presence of children." *Id.* Indeed, we have indicated, in finding that the State has failed to prove the "reckless" element of the crime of reckless possession of paraphernalia, that " 'it is difficult to imagine a set of facts that would satisfy the elements of reckless possession of paraphernalia.' " *Id.* at 152 (quoting *Vertner v. State*, 793 N.E.2d 1148, 1155 (Ind.Ct.App.2003) (Brook, C.J., concurring with separate opinion)). Consistent with our position in *C.A. Bean*, we conclude the State failed to prove Castner's possession of the crack pipe in this case was reckless, which constitutes a failure to prove an essential element of the offense. We therefore reverse Castner's conviction [6] due to insufficient evidence, and he may not be retried on this charge. *Id.; see Cockrell v. State*, 743 N.E.2d 799, 803 (Ind.Ct.App.2001).

*Cause Number 49G14–0310–FD–172190*

Castner also claims his theft conviction was based upon impermissible evidence resulting from an illegal search and seizure in violation of his Fourth Amendment rights. Castner argues Officer Barker conducted an illegal Terry stop. Upon appeal Castner seeks the suppression of "all evidence eventually located in the enclosure." Appellant's Brief at 15. The evidence in the enclosure included the CD player, a remote control, and a book of CDs, all of which were found in or on the dumpster. There was also testimony that a jacket was lying on the ground and that there was a screwdriver on the ground next to the jacket.

As stated above, an officer may briefly detain an individual if the officer observes unusual conduct which leads him to conclude, in light of his experience, that criminal activity is afoot. *Swanson*, 730 N.E.2d at 209, (citing *Terry*, 392 U.S. at 30, 88 S.Ct. 1868). The officer must have reasonable suspicion that such criminal activity is afoot. *Bridgewater*, 793 N.E.2d at 1099. Reasonable suspicion exists where the facts known to the officer and the reasonable inferences therefrom would cause an ordinarily prudent person to believe that criminal activity has or is about to occur. *Id.* In order to establish reasonable suspicion, law enforcement officers need not have the level of suspicion necessary for probable cause, but they must have more than an inchoate and unparticularized suspicion or hunch. *Belcher*, 725 N.E.2d at 94. Reasonable suspicion is determined on a case-by-case basis by looking at the totality of the circumstances. *Bridgewater*, 793 N.E.2d at 1100.

■■■ In this case, Officer Barker observed Castner, with one hand inside his coat, turn and walk in the opposite direction upon making eye-contact with him. We recognize that the act of turning away from police does not rise to the level of reasonable suspicion necessary to justify an investigatory stop. *Id.* at 1102 (citing *Tumblin v. State*, 664 N.E.2d 783, 785 (Ind.Ct.App.1996)). A short time later,

---

**6.** As we have determined Castner's conviction resulted from improperly admitted evidence, and further, that there was insufficient evidence to support it, we deem it unnecessary to determine whether the sentence enhancement was proper.

however, Officer Barker again observed Castner inside a fenced-in dumpster area outside of a Village Pantry store, his jacket lying on the ground next to a screwdriver, and a CD player, CDs, and a remote control stuffed into the C-bracket of the dumpster. In spite of the fact that at the time of the encounter there were no reported thefts in the area, we conclude Officer Barker would have had reasonable suspicion of criminal activity at this point to justify his further investigation. Castner's claims upon appeal that the evidence inside the dumpster area is irrelevant to the reasonable suspicion analysis, and that Officer Barker must have demonstrated reasonable suspicion even to pursue Castner to the dumpster area, are misplaced. We have above held that an individual who merely turns and walks away from an officer is free to leave, and that such activity does not give rise to an investigatory stop. *Id.* In this case, Officer Barker did not detain Castner until he found him in the dumpster area with the CDs and CD player. We find no error in this detention and accordingly conclude the disputed evidence was properly admitted.

In conclusion, we reverse the judgment of conviction in cause number 49G14–0306–FD–103073, reckless possession of paraphernalia, and remand with instructions to vacate the conviction and sentence thereon. We affirm the conviction in cause number 49G14–0310–FD–172190, theft.

FRIEDLANDER, J., and VAIDIK, J., concur.