Michael P. DUNN, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 22A01–0903–CR–127.

Court of Appeals of Indiana.

Jan. 15, 2010.

Transfer Denied April 1, 2010.

J. Patrick Biggs, Chief Public Defender, New Albany, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Arturo Rodriguez II, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary and Issue

Michael P. Dunn appeals his conviction for battery causing serious bodily injury, a class C felony,[1] arguing that the trial court abused its discretion in admitting evidence. We affirm.

### Facts and Procedural History

On December 14, 2006, at approximately 8:30 p.m., Dunn, Brittany Mathys, and Courtney Anderson went to Shooter's Bar in New Albany. Mathys was Dunn's girlfriend. Sometime that evening, Anderson called Kellen Rollins to ask him to join them at Shooter's. Rollins was a college student who had known Anderson and Mathys in high school. Rollins had a final exam the following morning for which he was studying, but he decided to take a break and arrived at Shooter's about 11:35 p.m. He did not intend to stay long because he had more studying to do. He got a beer at the counter and sat with Mathys and Anderson at a table. Dunn was playing poker in the back of Shooter's. Rollins did not know Dunn, nor did he speak to him while inside Shooter's. Rollins drank one to one and a half beers. About thirty minutes after he arrived, Rollins decided to leave. He and Anderson walked out the side door. Dunn and Mathys walked out behind them. Rollins started to say good-bye to Anderson when he heard someone say, "[W]hat was his name again." Tr. at 92.[2] Rollins turned around to say his name, and Dunn punched him in the face. Rollins fell to the ground, but got up at once, got in his car, and drove home. His eye started to swell immediately, and he was in immense pain, but he thought that he had just a black eye.

In the morning, Rollins took his final exam and then drove to a "Prompt Care" facility, where he was advised to go straight to the hospital. Doctors discovered that he had a fractured orbital bone. Thereafter, he reported the incident to the police. Rollins's injury required reconstructive surgery. He now has a permanent metal plate under his right eye.

On December 21, 2006, the State charged Dunn with class B felony aggravated battery, but later amended the charge to class C felony battery resulting in serious bodily injury. A jury trial was held November 18 through 20, 2008. The jury found Dunn guilty as charged. Dunn appeals.

### Discussion and Decision[3]

At trial, Rollins testified that Mathys called him approximately one hour after

---

1. Ind.Code § 35–42–2–1(a)(3).

2. There was also testimony that Dunn called Rollins a "p* * *y." Tr. at 165.

3. The appellant's appendix contains a copy of the entire transcript and exhibit volume, as well as numerous other court documents that are unnecessary for the resolution of the issue

the incident and left a voicemail message. The prosecutor asked Rollins whether he recalled what Mathys said. Defense counsel objected, and the prosecutor withdrew the question. Later, Mathys testified on Dunn's behalf. During cross examination, the prosecutor asked her whether she apologized to Rollins for Dunn's actions. *Id.* at 310. Defense counsel objected. During a sidebar conference, defense counsel stated, "It's not relevant whether she apologized or not that night. She didn't see what happened that night. [The prosecutor] is trying to . . . introduce a phone call that's not relevant and highly prejudicial." *Id.* The prosecutor responded,

It's relevant because what we have here is we have a witness that said, in her deposition, that she didn't see anything. . . . And now she said from the stand that she didn't see anything. So uh, there—there is a line of questioning that I would like to get into about apologizing for his behavior, uh, basically that he had no reason to do that, that he was jealous, and basically all implicating, uh, really that she did see something.

*Id.* at 313. The trial court ruled, "We had a number of witnesses that say that she was right there and that she was able to see everything and if that does go to credibility I think that, for that ground it—it's admissible." *Id.* at 314.

The jury was brought back into the courtroom. The prosecutor asked Mathys whether she apologized to Rollins for Dunn's behavior. She testified that she did not remember. *Id.* at 319. The prosecutor asked her whether she remembered making a phone call to Rollins about an hour after the incident and leaving a voicemail message, and she again stated that

she did not remember. *Id.* at 319–20. The prosecutor then asked that the voicemail message be admitted. Defense counsel again objected because a foundation had not been laid for its admission. *Id.* at 321–22. The prosecutor responded that Rollins had testified on redirect that he received a phone call from Mathys about an hour or an hour and a half after the incident. Outside the presence of the jury, the State played the voicemail message to Mathys to refresh her memory. The jury was brought back into the courtroom, the prosecutor asked Mathys whether it was her voice on the voicemail message, and she testified that it was. The trial court then admitted the voicemail message over Dunn's objection, and it was played to the jury:

RECORDED VOICE: Please enter your password. First saved message sent Thursday, December 14th at 1:12 a.m.

MS. MATHYS: Kellen, it's Brittany. I'm so sorry for what Mike did to you. There's no reason for him to do that. He's just—just jealous and there's no point. I really do apologize for the way that he treated you and he owes you an apology, too. But hopefully you're all right. I'm really sorry about what he did. I'm so sorry.

Tr. at 335; State's Ex. 6. Dunn admitted to hitting Rollins but claimed self-defense as a justification.

■ Dunn argues that, because the State failed to lay a proper foundation, the trial court erred in admitting Mathys's voicemail message to Rollins. We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Combs v. State,* 895 N.E.2d 1252, 1255

on review. The result is a five-volume appellant's appendix of over 800 pages, an enormous waste of paper and expense. We refer appellant's counsel to Indiana Appellate Rule

50, which describes the proper contents of an appendix, including, among other things, only those portions of the transcript that are important to the issues on appeal.

(Ind.Ct.App.2008), *trans. denied* (2009). We will reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Id.* "We consider the evidence most favorable to the court's decision and any uncontradicted evidence to the contrary." *Castner v. State,* 840 N.E.2d 362, 365 (Ind.Ct.App.2006). We may uphold the trial court's ruling on any valid basis. *Benson v. State,* 762 N.E.2d 748, 754 (Ind.2002).

Dunn contends that the voicemail message was inadmissible pursuant to Indiana Rules of Evidence 602 and 701.

Evidence Rule 602 provides:

> A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. A witness does not have personal knowledge as to a matter recalled or remembered, if the recall or remembrance occurs only during or after hypnosis. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness.

Evidence Rule 701 states:

> If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to the clear understanding of the witness's testimony or the determination of a fact in issue.

Dunn concedes that "[i]t is well settled in Indiana law that a lay witness may express an opinion on numerous subjects if based upon personal knowledge and the proper factual basis for the opinion has been established." *Hawkins v. State,* 626 N.E.2d 436, 441 (Ind.1993). However, he asserts that Mathys did not have personal knowledge that Dunn hit Rollins because she testified that she "did not witness it."

Tr. at 307. Although Mathys's testimony does not establish that she had personal knowledge of the incident, Evidence Rule 602 does not require that personal knowledge be established by the witness's testimony. Here, other evidence establishes that Mathys had personal knowledge of the incident. Anderson testified that "[Mathys] was out there, she did see [Dunn] hit [Rollins] and she was trying to stop him from doing so, so she was saying, Mike, stop." *Id.* at 165. Also, Ronnie Hudgins and Jeremiah Kopp, who witnessed the incident, testified that Mathys was outside with Rollins and Dunn when Dunn hit Rollins. *Id.* at 227, 280. We must consider the evidence most favorable to the trial court's ruling. *See Castner,* 840 N.E.2d at 365. As such, we conclude that a proper foundation was laid to establish that Mathys had personal knowledge of the incident.

■ Dunn also challenges the admissibility of the voicemail message based on Mathys' statement that Dunn was "just jealous." Tr. at 335; State's Ex. 6. Dunn asserts that there was no foundation laid to show that Mathys knew anything about Dunn's thinking, his intent, or his motive for acting. Appellant's Br. at 12. We disagree. We observe that "[t]he requirement that proffered opinion testimony be rationally based on the witness's perception means simply that the opinion must be one that a reasonable person normally could form based on the perceived facts." *Hanson v. State,* 704 N.E.2d 152, 155 (Ind. Ct.App.1999) (citation and quotation marks omitted). Here, Mathys testified that she had dated Dunn "off and on for a couple of years." Tr. at 303. Further, there is no dispute that she was at Shooter's that evening and that she went there with Dunn. Her personal knowledge of Dunn's personality over the course of a couple of years and her presence at Shooter's that

evening and at the scene of the incident constitute a rational basis for her perception of Dunn's emotional state.

■ In addition to requiring that a witness's opinion or inference be rationally based on the perception of the witness, Evidence Rule 701 requires that the opinion or inference be helpful to the clear understanding of the witness's testimony or the determination of a fact in issue. Although not challenged by Dunn, we conclude that the voicemail message was helpful to the determination of a fact in issue. Here, Dunn claimed that he hit Rollins in self-defense. Self-defense is a valid justification for an otherwise criminal act. *Wallace v. State*, 725 N.E.2d 837, 840 (Ind. 2000). "A person is justified in using reasonable force against another person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force." Ind. Code § 35–41–3–2(a). A person is not justified in using force if the person enters into combat with another person or is the initial aggressor, unless the person withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action. Ind.Code § 35–41–3–2(e)(3). Self-defense is established if a defendant: (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *Wallace*, 725 N.E.2d at 840. The State has the burden of disproving self-defense, and therefore once a defendant claims self-defense, the State must disprove at least one of the elements beyond a reasonable doubt. *Miller v. State*, 720 N.E.2d 696, 700 (Ind.1999). "The State may meet this burden by rebutting the defense directly, by affirmatively showing the defendant did not act in self-defense, or by simply relying upon the sufficiency of its evidence in chief." *Id.*

Here, whether Dunn or Rollins initiated the first act of aggression was disputed. Rollins and Anderson testified that Dunn punched Rollins first. On the other hand, witnesses Hudgins and Kopp testified that they saw Rollins raise his arm and attempt to either hit or shove Dunn before Dunn hit him. Mathys's statement that "[t]here's no reason for [Dunn] to do that. He's just—just jealous and there's no point[,]" is helpful to the determination of whether Dunn provoked, instigated, or participated willingly in the violence. Tr. at 335; State's Ex. 6. Accordingly, we conclude that the admission of the voicemail message did not violate either Evidence Rule 602 or 701.[4] We therefore affirm the trial court.

Affirmed.

RILEY, J., and VAIDIK, J., concur.

---

4. Dunn also argued that the voicemail message should have been excluded under Indiana Rule of Evidence 704(b). Indiana Rule of Evidence 704(b) reads, in relevant part, "Witnesses may not testify to opinions concerning intent ... in a criminal case [.]" We conclude that Dunn's intent was not implicated by the voicemail message, and therefore Evidence Rule 704(b) is inapplicable.