



FILED

Jun 22 2023, 12:19 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

I N   T H E

# Indiana Supreme Court

Supreme Court Case No. 23S-CR-13

## Matthew Hayko,
*Appellant*

–v–

## State of Indiana,
*Appellee*

Argued: March 2, 2023 | Decided: June 22, 2023

Appeal from the Spencer Circuit Court
No. 74C01-1902-F3-58
The Honorable Jon A. Dartt

On Petition to Transfer from the Indiana Court of Appeals
No. 21A-CR-2407

**Opinion by Chief Justice Rush**

Justices Massa, Slaughter, Goff, and Molter concur.

**Rush, Chief Justice.**

Who and what to believe are matters of personal choice. These choices are deeply consequential in a jury trial, but they belong exclusively to each juror. Yet, our rules of evidence provide parties with several ways to influence a juror's credibility assessment. Indiana Evidence Rule 608(a), for example, allows parties to cut to the credibility core by eliciting a witness's opinion regarding another witness's character for truthfulness or untruthfulness.

This case implicates an issue of first impression under Rule 608(a): what is required to establish the proper foundation for a witness's opinion testimony? At trial, a defendant accused of molesting his minor daughter sought to admit opinions from three of his family members regarding the victim's untruthful character. The trial court excluded the proffered testimony for lack of foundation, which the defendant contends was reversible error.

We first clarify that the evidentiary foundation required to admit opinion testimony is less demanding than that required to admit reputation testimony. To lay a proper foundation for opinion testimony under Rule 608(a), the proponent must establish that the witness's opinion is both rationally based on their personal knowledge and would be helpful to the trier of fact. We hold the trial court erred in excluding the opinion testimony here, as the court relied on foundation considerations relevant only to reputation testimony. But we then hold the error was harmless and, thus, affirm.

## Facts and Procedural History

Matthew Hayko and L.D. are parents to three daughters from their previous relationship, including V1, who was born in November 2006. After the couple separated, Hayko exercised visitation with V1 and her two sisters every other weekend during the school year. During a visit in February 2018, Hayko and his wife hosted another couple for dinner at their home, and they played a couple games together. While playing cards, Hayko—who had consumed around four to ten beers—rubbed V1's

back. V1 asked Hayko to continue rubbing her back once the game was over, which he did as he tucked her into bed and lay down beside her.

In bed, Hayko put his hand under V1's bra and rubbed her breast "[s]kin to skin." He then put his hand under V1's underwear, inserted his finger into her vagina two or three times, and kissed her face and neck. Hayko eventually stopped touching V1 and left the room, but he returned within a few minutes and fell asleep in her bed. When they woke up the next morning, Hayko had his arm on V1's shoulder, realized he had fallen asleep, and noted it was "awkward." He apologized to V1 and asked her not to tell anyone about what happened, assuring her that it wouldn't happen again.

About a year later, Hayko took his daughters out to eat where V1 became "uncomfortable" while observing Hayko with his arm around her younger sister "the whole dinner." After returning to L.D.'s home that evening, V1 "started crying" and informed her mother that Hayko had previously touched her inappropriately. L.D. subsequently brought V1 to their local child advocacy center where she underwent a forensic interview.

The following day, Hayko agreed to speak with law enforcement about V1's allegations. During that interview, Hayko told a detective he "had been drinking all day" and "was wasted" on the night of the incident. He remembered "waking up the next morning" in V1's bed with his "arm around her, cuddling her, kind of like I would if it was my wife," which was "awkward." He also recalled asking V1 to "keep this between us." Though Hayko did not remember fondling or touching V1, he declined to tell the detective that V1 "is a liar." And he acknowledged "if this did happen, you know, and I don't recall because I was drinking, wasted, or whatever" that "this would be an isolated incident."

The State subsequently charged Hayko with one count of Level 1 felony child molestation, one count of Level 3 felony child molestation, one count of Level 4 felony child molestation, and one count of Level 4 felony incest. Before trial, Hayko notified the State he intended to call three relatives as witnesses to testify about their opinion of V1's character for untruthfulness. The State objected, contending the witnesses lacked

"adequate knowledge of the victim's character" and that they had "no recent contact or familiarity with the victim." After holding a hearing on the matter, the trial court issued an order requiring Hayko to make an offer of proof outside the jury's presence to demonstrate that the "character witnesses can meet the foundation requirement of having an adequate basis to give an opinion as to the alleged victim's truthfulness or untruthfulness."

During that offer of proof at trial, Hayko elicited the opinions of his father (V1's paternal grandfather), his stepmother (V1's paternal step-grandmother), and his sister (V1's paternal aunt). Each testified they had known V1 since she was born, had spent time around her at various family gatherings throughout the years, had personally interacted with her and observed her interactions with others, and had last seen her shortly before she made the allegations. Based on their respective experiences, each witness opined that V1 had a dishonest character.

The trial court excluded their testimony, concluding that Hayko had not established a proper foundation. In reaching its conclusion, the court reasoned that the three witnesses were "too insular" of a group and their contacts with V1 were "not sufficient to justify an opinion about the child's reputation for truthfulness." Hayko objected, asserting the witnesses were "not there to talk about [V1's] reputation in the community," and that he established an adequate foundation for the witnesses to offer their opinions of V1's character based on their "personal observations" and "interactions" with the child. The trial court overruled the objection, reiterating it did not find "sufficient contacts" for the witnesses "to be able to form and express those opinions."

Also, during trial, V1 testified about the allegations; Hayko testified and denied touching V1 inappropriately; Hayko introduced messages he exchanged with L.D. in which the parents discussed V1's behavioral problems and her proclivity to lie and manipulate; and the State introduced Hayko's interview with law enforcement. The jury ultimately found Hayko guilty of Level 4 felony child molesting and not guilty of the remaining three counts. The trial court subsequently imposed a sentence of eight years, with two of those years suspended to probation.

Hayko appealed and raised several issues, including whether the trial court erred by denying his request for the three witnesses to testify as to their opinion of V1's untruthfulness. A divided Court of Appeals' panel found this issue dispositive and reversed, with the majority concluding that the court erred by excluding the opinion testimony and that the error was not harmless. *Hayko v. State*, 196 N.E.3d 259, 268 (Ind. 2022). Judge Tavitas dissented, believing the trial court acted within its discretion in excluding the testimony. *Id.* at 274 (Tavitas, J., dissenting).

The State petitioned for transfer, which we granted, vacating the Court of Appeals' opinion. Ind. Appellate Rule 58(A).[1]

## Standard of Review

Hayko argues the trial court abused its discretion by admitting vouching testimony, by permitting the State to condition the jury on V1's credibility during voir dire, and by excluding his proffered opinion

---

[1] We summarily affirm the part of the Court of Appeals' opinion that held the trial court did not err by admitting into evidence Hayko's statements to police. *See* App. R. 58(A)(2). And we briefly address two arguments Hayko raises related to his sentence, which the panel did not reach. He argues the trial court abused its discretion by identifying an improper aggravating circumstance. However, even if we agreed, he would not be entitled to relief. The trial court identified two other aggravating circumstances—Hayko abusing his position of trust with V1 and his criminal history—that Hayko does not challenge and that support the sentence imposed. *See, e.g., Garrett v. State*, 714 N.E.2d 618, 623 (Ind. 1999) ("A single aggravating circumstance may be sufficient to support an enhanced sentence."). Hayko also argues his sentence is inappropriate under Appellate Rule 7(B). We disagree. Our Rule 7(B) authority is reserved "for exceptional cases," *Faith v. State*, 131 N.E.3d 158, 160 (Ind. 2019), and we exercise that authority to "leaven the outliers," *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). This is not an exceptional case, as Hayko has failed to produce compelling evidence showing that the nature of his offense or his character renders his slightly enhanced sentence an outlier.

testimony. Because we find the first two arguments lack merit,[2] our review is limited to whether the trial court committed reversible error by excluding Hayko's opinion testimony.

We review a trial court's decision to exclude evidence for an abuse of discretion, which occurs when the court misinterprets the law. *See Smith v. Franklin Twp. Cmty. Sch. Corp.*, 151 N.E.3d 271, 273 (Ind. 2020); *Snow v. State*, 77 N.E.3d 173, 177 (Ind. 2017). Though Hayko contends the court's exclusion here denied him his constitutional right to present a defense, the fact that the trial court may have erred in excluding evidence does not transform that error into one of constitutional dimension. *See Hastings v. State*, 58 N.E.3d 919, 923 (Ind. Ct. App. 2016). And Hayko's alleged error is not one of constitutional dimension because he was able to exercise his right to present his defense—attacking V1's credibility—by presenting the jury with other, significant impeachment evidence. Thus, even if the court abused its discretion in excluding Hayko's opinion testimony, we review whether this non-constitutional error was harmless such that its "probable impact in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties." App. R. 66(A).

## Discussion and Decision

Indiana Evidence Rule 608(a) allows a party to attack a witness's credibility in two distinct ways: (1) through "testimony about the

---

[2] The trial court did not abuse its discretion by denying Hayko's objection, under Evidence Rule 704(b), when V1's forensic interviewer answered "no" after the State asked her whether "delayed disclosure [is] necessarily a sign of deception." Rule 704(b), in relevant part, prohibits a witness from testifying that another "witness has testified truthfully." Ind. Evidence Rule 704(b). The forensic interviewer's answer did not relate to the truth or falsity of V1's allegations; it was merely an observation rooted in her experience regarding the behavior of child victims generally. *Cf. Ward v. State*, 203 N.E.3d 524, 532 (Ind. Ct. App. 2023). The trial court also did not abuse its discretion by denying Hayko's objections during voir dire, as the State's questioning did not condition the jury on V1's credibility. Rather, the State's questions were properly aimed at discerning whether a prospective juror had any opinion, belief, or bias about children and their credibility, or whether they had any experiences that would impact their ability to evaluate a child's testimony concerning allegations of molestation. *Cf. Hopkins v. State*, 429 N.E.2d 631, 635 (Ind. 1981).

witness's **reputation** for having a character for truthfulness or untruthfulness"; or (2) through "testimony in the form of an **opinion** about" the witness's character for truthfulness or untruthfulness. Ind. Evidence Rule 608(a) (emphasis added). However, "evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked." *Id.* Though this limitation does not apply when a party introduces evidence of a witness's untruthful character, that evidence must be supported by a proper foundation before being admitted.

We have clarified the foundational requirements for admitting reputation testimony, *Bowles v. State*, 737 N.E.2d 1150, 1153 (Ind. 2000), but we have not done the same for admitting opinion testimony until now. To lay a proper foundation for the admission of opinion testimony under Rule 608(a), the proponent must establish that the witness's opinion is rationally based on their personal knowledge and that the opinion would be helpful to the trier of fact. We hold that Hayko satisfied these requirements, and the trial court erred in excluding his proffered opinion testimony by relying on foundation considerations relevant only to reputation testimony. We then hold, considering all the evidence before the jury, that Hayko has not shown the court's error would have impacted a reasonable, average jury to such an extent that it undermines our confidence in the verdict. We therefore affirm.

## I. The trial court erred in excluding the opinion testimony.

Like experts, lay witnesses are permitted to offer their opinions on a variety of relevant matters. *Barcroft v. State*, 111 N.E.3d 997, 1003 (Ind. 2018). Still, "whether a witness is qualified to give an opinion" is a matter left to the trial court's discretion. *Kent v. State*, 675 N.E.2d 332, 338 (Ind. 1996). So too is whether the witness's testimony is supported by a proper foundation. *Hill v. State*, 470 N.E.2d 1332, 1336 (Ind. 1984). We first clarify the foundational requirements for admitting opinion testimony under Rule 608(a) and then determine whether the trial court abused its discretion when it excluded the opinion testimony of Hayko's witnesses.

### A. The proponent establishes a proper foundation for opinion testimony under Rule 608(a) by demonstrating that the witness's opinion is both rationally based on their personal knowledge and would be helpful to the trier of fact.

When a witness testifies at trial, their credibility is subject to impeachment—that is, it may be attacked. *See* Evid. R. 404(a)(3), 607, 608, 609, 616. One impeachment mechanism, Rule 608(a), allows a party to attack a witness's credibility through reputation or opinion testimony. Evid. R. 608(a). But the two are not equivalent. While reputation testimony reflects the consensus of **many** close to and familiar with a witness's character, *see Norton v. State*, 785 N.E.2d 625, 631–32 (Ind. Ct. App. 2003), opinion testimony reflects the judgment of a **single** individual. To be sure, not just anyone can offer their opinion about a witness's untruthful character. The question then is what a proponent must show to establish that a witness can reliably offer an opinion regarding another's character for truthfulness under Rule 608(a).

In answering this question, we find two evidentiary rules instructive. The first is Rule 602, which provides that a "witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Evid. R. 602. And the second is Rule 701, which limits a lay witness's testimony in the form of an opinion to one that is both "rationally based on the witness's perception" and "helpful to a clear understanding of the witness's testimony or to a determination of a fact in issue." Evid. R. 701. Informed by these relevant constraints, an opinion on another's character for truthfulness or untruthfulness under Rule 608(a) must stem from the testifying witness's personal knowledge of that character. And because a witness offering such an opinion is not testifying as an expert, their personal knowledge must be the rational product of the witness's own perception—such as interactions or observations—and also be helpful to the trier of fact. *Cf. In re A.F.*, 69 N.E.3d 932, 949 (Ind. Ct. App. 2017), *trans. denied*; *Dunn v. State*, 919 N.E.2d 609, 612 (Ind. Ct. App. 2010), *trans. denied*;

*Tolliver v. State*, 922 N.E.2d 1272, 1278 (Ind. Ct. App. 2010), *trans. denied*; *Prewitt v. State*, 819 N.E.2d 393, 413–14 (Ind. Ct. App. 2004), *trans. denied.*

Yet, the State argues more should be required, contending a proponent must also show the "opinion is based on sufficient and recent contact" with the witness whose credibility is being attacked. Hayko disagrees, noting the vast majority of jurisdictions do not impose these requirements and emphasizes that cross-examination allows parties to expose such deficiencies with the witness's opinion. We share Hayko's perspective.

Most jurisdictions—federal and state alike—do not require a proponent to establish sufficient and recent contacts in laying a foundation for opinion testimony about a witness's character. Indeed, such a showing is not required under Federal Rule of Evidence 608(a), which is identical to our rule. *See, e.g.*, *United States v. McMurray*, 20 F.3d 831, 834 (8th Cir. 1994); *United States v. Watson*, 669 F.2d 1374, 1382 (11th Cir. 1982); *United States v. Lollar*, 606 F.2d 587, 589 (5th Cir. 1979). And most states interpreting their analogous evidentiary rules have reached the same conclusion. *See, e.g.*, *Fitzgerald v. Stanley Roberts, Inc.*, 186 N.J. 286, 895 A.2d 405, 419–20 (2006); *State v. Carsner*, 126 Idaho 911, 894 P.2d 144, 150 (1995); *State v. Dutton*, 896 S.W.2d 114, 118 (Tenn. 1995); *Honey v. People*, 713 P.2d 1300, 1302–03 (Colo. 1986) (en banc); *State v. Hernandez*, 184 N.C. App. 344, 646 S.E.2d 579, 583 (2007). These courts aptly recognize the distinction between reputation evidence and opinion evidence—particularly that the foundational requirements for the latter are less stringent than those for the former.

But, as the State observes, not all states embrace a minimal foundational standard for the admission of opinion testimony. For instance, Oregon and Maryland require a proponent to also establish frequent and recent contact between the character witness and the principal witness. *Devincentz v. State*, 460 Md. 518, 191 A.3d 373, 390–91 (2018); *State v. Paniagua*, 286 Or. App. 284, 341 P.3d 906, 910 (2014).

We decline to embrace this minority approach for several reasons, the first being that it fails to distinguish between the nature of reputation and opinion evidence, as each serves a distinct purpose. For reputation evidence, a showing of sufficient acquaintance makes sense "to ensure

that the testimony adequately reflects the community's assessment." *Watson*, 669 F.2d at 1382. But opinion evidence is "a personal assessment of character," and thus, the witness is not relating community feelings; they are simply providing their own "impression of an individual's character for truthfulness." *Id.*

Additionally, while parties may take issue with the credibility of a witness's opinion when it is rooted in remote experiences, these concerns can be adequately addressed during cross-examination. That is, parties may expose any remote-contact concerns in an opinion witness's testimony and thereby provide the factfinder with additional evidence from which to make the ultimate credibility determination. Further, there is no objective reason why a witness's opinion premised on less-recent interactions is inherently unreliable. Likewise, there is no objective way to determine when a witness's interactions are too remote or infrequent.

Finally, establishing a proper foundation for opinion testimony does not require its admission. Indeed, the trial court can still exclude the testimony under other evidentiary rules. For example, courts retain discretion—based on the facts and issues in a particular case—to assess the evidence's probative value and determine whether it is substantially outweighed by one of Rule 403's dangers. *See, e.g.*, *United States v. Turning Bear*, 357 F.3d 730, 734–35 (8th Cir. 2004); *State v. Tetreault*, 31 A.3d 777, 782–83 (R.I. 2011); *see also State v. Wood*, 194 W. Va. 525, 460 S.E.2d 771, 774 (1995) (explaining that, in addition to Rule 403, trial courts may exclude opinion testimony under Rules 402 and 611).

To reiterate—based on Rules 602 and 701 and informed by the approach taken in a majority of jurisdictions—we hold that, to lay a proper foundation for the admission of opinion testimony under Rule 608(a), the proponent must establish that the witness's opinion is both rationally based on their personal knowledge and would be helpful to the trier of fact. Yet, even when foundation is established, the trial court retains discretion to exclude the evidence based on other rules of evidence. We now apply these principles to assess the court's decision to exclude the opinion testimony here.

## B. The opinion testimony was supported by a proper foundation.

At trial, Hayko sought to introduce three opinion witnesses: his father (V1's paternal grandfather), his stepmother (V1's paternal step-grandmother), and his sister (V1's paternal aunt). During an offer of proof, Hayko elicited testimony from these witnesses to establish a foundation for their opinions. Each witness testified they had known V1 since she was born, had been around her multiple times a year at family gatherings, had directly communicated with her and personally observed her interactions with others, and had last seen her not long before the allegations. Based on those experiences, V1's paternal grandfather opined that V1 has a "[d]ishonest" character, and her paternal step-grandmother similarly testified that V1 is "very dishonest." She based her opinion on witnessing V1 lie to Hayko after hitting another child and after taking a toy from another child. Likewise, V1's paternal aunt opined that VI is "a very dishonest child." She explained that she started to notice V1's dishonest character when her personality began to develop as a toddler and recounted witnessing V1 lie.

The above testimony established a proper foundation for each witness's opinion of V1's character for untruthfulness. Their opinions were rationally based on their personal knowledge, specifically their own observations of and interactions with V1, which occurred on multiple occasions. And those opinions would be helpful to the jury because V1's credibility was central to the charges against Hayko. Although we have for the first time clarified and applied the requirements for laying a proper foundation for opinion testimony under Rule 608(a), the trial court here nonetheless erred—albeit understandably—in excluding the evidence.

The trial court erred because its decision was based exclusively on considerations related to establishing a foundation for reputation testimony. Indeed, the court concluded the witnesses were "too insular" and their contacts with V1 were "not sufficient to justify an opinion about the child's reputation for truthfulness." The court further reasoned the witnesses' testimony was not sufficiently reliable "because it would be based off the same set of biases." But whether the witnesses were too

insular or lacked sufficient contacts with V1 does not negate that their opinions were rationally based on their personal knowledge or that they would have been helpful to the jury. Additionally, though the trial court suggested it addressed whether a foundation had been laid under Rule 608(a) in its entirety, the court did not distinguish between reputation and opinion testimony. And there is no basis in the record for us to conclude the court relied on a different evidentiary rule to exclude the evidence.

Simply put, the trial court's conflation of reputation and opinion testimony—a misinterpretation of the law—resulted in the erroneous exclusion of Hayko's opinion testimony for lack of foundation. We now determine whether that error requires reversal.

## II. Exclusion of the opinion testimony was harmless error.

A trial court's error in excluding evidence does not require reversal if the error was harmless. For non-constitutional errors, like the one here, our harmless-error analysis is found in Appellate Rule 66(A):

> No error or defect in any ruling or order or in anything done or omitted by the trial court or by any of the parties is ground for granting relief or reversal on appeal where its probable impact, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties.

App. R. 66(A). Though neither party cited this rule in their briefing on this issue, their omissions illustrate a larger, confusing trend in Indiana caselaw. We thus rectify that confusion today.

In the two-plus decades since Rule 66(A)'s adoption, its application in our appellate courts has been far from consistent. *See* Edward W. Najam, Jr. & Jonathan B. Warner, *Indiana's Probable-Impact Test for Reversible Error*, 55 Ind. L. Rev. 27, 35–50 (2022). Much of the inconsistency stems from caselaw reviewing whether an error is harmless under Trial Rule 61. Rule 61 instructs an evidentiary error is not grounds for "reversal on appeal

unless refusal to take such action appears to the court inconsistent with substantial justice" and directs courts to "disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Ind. Trial Rule 61 (punctuation omitted). The similarities between Trial Rule 61 and Appellate Rule 66(A) have produced discrepancies about which rule governs appellate review of non-constitutional errors and how the rule should be applied.

Appellate Rule 66(A), not Trial Rule 61, defines reversible error for our appellate courts.[3] When an appellate court must determine whether a non-constitutional error is harmless, Rule 66(A)'s "probable impact test" controls. Under this test, the party seeking relief bears the burden of demonstrating how, in light of all the evidence in the case, the error's probable impact undermines confidence in the outcome of the proceeding below. *See Mason v. State*, 689 N.E.2d 1233, 1236–37 (Ind. 1997); Najam & Warner, *supra* at 50–51. Importantly, this is not a review for the sufficiency of the remaining evidence; it is a review of what was presented to the trier of fact compared to what should have been presented. And when conducting that review, we consider the likely impact of the improperly admitted or excluded evidence on a reasonable, average jury in light of all the evidence in the case. *See Tunstall v. Manning*, 124 N.E.3d 1193, 1200 (Ind. 2019). Ultimately, the error's probable impact is sufficiently minor when—considering the entire record—our confidence in the outcome is not undermined.

Here, Hayko argues the error denied him the opportunity to impeach V1's credibility, which was vital to his defense. To be sure, credibility is often a central issue in child molestation cases, so impeachment evidence plays a pivotal role for the defense. *See, e.g.*, *Baker v. State*, 948 N.E.2d 1169, 1179 (Ind. 2011). And, as indicated in Section I, Hayko should have been

---

[3] Judge Najam and Jon Warner aptly recognize the "on appeal" language in Trial Rule 61 "simply recognizes that, on occasion, Indiana's trial courts also engage in a manner of appellate review, such as when they engage in judicial review of state or local government agency decisions. But a trial court's judicial review differs from an appellate court's review of reversible error." Najam & Warner, *supra* at 50.

permitted to attack V1's credibility with the opinion testimony of his three witnesses. But we must consider all the evidence before the jury to determine whether the excluded evidence would have impacted a reasonable, average jury to such an extent that we lack confidence in the verdict. Because we remain confident in the verdict despite the trial court's error, the error was harmless.

In reaching this conclusion, we initially observe that Hayko presupposes the opinion testimony carried a probative value favorable to him. Yet, as revealed in the offer of proof, each witness was a member of Hayko's immediate family, so the potential for bias loomed. Moreover, during cross-examination, the State extracted the basis for the witnesses' opinions, which included recounting stories of V1, as a young child, lying about both stealing a toy and getting into an altercation with another child. It is not, however, uncommon for young children who steal toys or hit others to lie to avoid consequences for these acts. So, while it's possible that a reasonable, average jury would have found the witnesses' opinions undermined V1's credibility, it's also possible the opinions would have had little to no effect. Accordingly, it is not readily apparent a reasonable, average jury would have weighed the witnesses' opinions of V1's character for untruthfulness in a manner favorable to Hayko.

That said, if the excluded testimony was the only evidence attacking V1's credibility, our confidence in the verdict would wane considerably. But the record reveals Hayko impeached V1's credibility through other evidence. For example, he told the jury that V1 was "manipulative, vindictive" and that he "knew she was a liar." He also admitted into evidence text messages between himself and V1's mother about V1's untruthful character. In one message, V1's mother advised Hayko to join her in keeping "a log of all of [V1's] incidents" because "[i]t's too hard . . . to remember all the episodes she has" and that if she didn't see "improvement" in V1's behavior, she would "look into a counselor for her." In another message, V1's mother told Hayko that V1 was "learning how to manipulate" people and that, in light of her "manipulative" behavior, "[y]ou can't believe everything that comes out of her mouth."

The jury also had the opportunity to directly assess V1's allegations and credibility through her own testimony. Specifically, she told the jury Hayko "put his hand under [her] bra and started rubbing [her] breast." She also said Hayko touched underneath her underwear and "put his finger inside" her vagina two or three times while kissing her, recalling that Hayko made a "low groan noise" during this time. And when they awoke the next morning, she stated that Hayko apologized to her, instructed her not to "tell anyone" what happened, and assured her "it won't happen again." The jury then listened as Hayko's attorney questioned V1's allegations and her credibility during cross-examination.

Further confirming the error does not undermine our confidence in the verdict is the fact that the jury heard Hayko provide inconsistent answers when questioned about V1's allegations. In his pre-trial interview, the jury listened as Hayko explained he was "wasted" the night he fell asleep in V1's bed and remembered waking up next to her the following morning "cuddling, you know, laying close to her, like, as if she was my wife." He admitted telling V1 to "keep this between us." Then, after the detective explained to Hayko the nature of V1's allegations, he asked, "Do you know what that sounds like? It sounds like, okay, been drinking, you wasn't realizing what you was doing, and then at some point you do realize. Does that make sense?" Hayko responded, "Yeah, it does." While Hayko denied touching V1 in the ways alleged, he also stated, "[I]f this did happen, you know, and I don't recall because I was drinking, wasted, or whatever," it "would be an isolated incident." When questioned at trial, however, Hayko provided a different version of events. For example, he testified that he was "not wasted" on the night of the incident and that he could "recall everything" that happened. Thus, a reasonable, average jury would find that just as V1's credibility was at issue, so too was Hayko's.

Ultimately, we recognize that impeachment evidence can have a profound effect in child molestation cases, as they often turn on credibility determinations. But the erroneous exclusion of some impeachment evidence will not necessarily undermine our confidence in the jury's verdict. This case is one such example. Hayko has not shown, considering all the evidence before the jury, that the excluded opinion testimony

would have impacted a reasonable, average jury to such an extent that undermines our confidence in the verdict. The error is therefore harmless.

## Conclusion

Hayko laid a proper foundation to admit his proffered opinion testimony, and the trial court erred in excluding that evidence for lack of foundation. But because we conclude the error was harmless, we affirm.

Massa, Slaughter, Goff, and Molter, JJ., concur.

ATTORNEY FOR APPELLANT
Matthew J. McGovern
Fishers, Indiana

ATTORNEYS FOR APPELLEE
Theodore E. Rokita
Attorney General of Indiana

Angela Sanchez
Chief Counsel for Appeals

George P. Sherman
Supervising Deputy Attorney General
Indianapolis, Indiana